**Lomel A. ALLEN, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 86–1566, 86–1567, 87–371, 88–1010, 88–1578, and 89–711.**

District of Columbia Court of Appeals.

Argued Feb. 21, 1990.
Decided Sept. 21, 1990.

Peter H. Meyers, appointed by this court, for appellant.

Henry S. Hoberman, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., were on the brief, for appellee. G. Michael Lennon, Asst. U.S. Atty., also entered an appearance for appellee.

Before ROGERS, Chief Judge, and TERRY and SCHWELB, Associate Judges.

TERRY, Associate Judge:

These consolidated appeals arise from two separate trials in which appellant was convicted of several drug offenses. Appel-lant presents three arguments in challenging both convictions and the sentence in the second case. We reject all three and affirm the judgments in all respects.[1]

## I

### A. *The First Case*

Appellant was charged with one count of distributing cocaine, in violation of D.C. Code § 33–541(a)(1) (1988). Before trial he filed a motion to suppress the cocaine and all identification evidence, which was denied by Judge King after an evidentiary hearing.

At the hearing, Officer Debra Vanadia testified that on June 5, 1986, while working under cover, she purchased a package of white powder from appellant which purported to be cocaine. After a short conversation about other matters, appellant walked away. Vanadia quickly broadcast a lookout which included a description of his clothing and his direction of travel. Two other officers, part of an arrest team, heard the broadcast and saw appellant run into an apartment building. They followed him into the building, and soon one of them brought him outside, where Officer Vanadia positively identified him as the man from whom she had bought the cocaine.[2] Her on-the-scene identification occurred within "a minute or two" after appellant had left the corner where the sale had taken place.

At the conclusion of Officer Vanadia's testimony, defense counsel pointed out that Officer Vanadia had not been asked to

---

1. Although there are six appeals before us in these cases, the parties agree that only two of them—Nos. 86–1566 and 87–371, the appeals from the two judgments of conviction—are "viable" and need to be decided on the merits. Shortly after filing his consolidated brief in the first five appeals, appellant filed a memorandum stating that the sixth appeal, No. 89–711, raised no additional issues. He also acknowledges in his brief that Nos. 86–1567 and 88–1578 are duplicative and may be "dismissed or ignored," and that No. 88–1010 is moot. The government, in a footnote in its brief, agrees with these representations. We accordingly dismiss Nos. 86–1567, 88–1010, 88–1578, and 89–711.

2. Officer Vanadia, who was in an unmarked automobile during the drug sale, lost sight of appellant briefly after he left. However, her partner (another undercover officer) drove the car in the direction in which appellant had gone, and after they had traveled "a few car lengths," Vanadia testified, she saw appellant being escorted out of the apartment building and down the stairs. She immediately recognized him and identified him. On cross-examination Vanadia said that she and her partner set out to follow appellant "because where this transaction occurred was not the usual place."

Testimony at the ensuing trial established that appellant's mother lived in the apartment where appellant was found.

identify appellant in court as the man involved in the drug transaction, and urged that the cocaine be suppressed for that reason. Judge King ruled, however, that "there is no requirement that she make a present [in-court] identification for purposes of the motion." Focusing instead on the lawfulness of the arrest and the circumstances surrounding the on-the-scene identification, the judge denied the motion, concluding that the seizure of appellant was lawful and that the identification was not unduly suggestive.

A jury trial began the next day, and at its conclusion the jury found appellant guilty as charged. Several weeks later Judge King sentenced appellant to five years' incarceration under the Youth Rehabilitation Act of 1985 (Youth Act), D.C. Code § 24–803 (1989).

## B. *The Second Case*

Shortly before appellant's first trial began, a second grand jury returned an indictment charging him with five counts of violating D.C. Code § 33–541(a)(1): distribution of phencyclidine (PCP), distribution of cannabis (marijuana), possession of PCP with intent to distribute it, possession of marijuana with intent to distribute it, and distribution of cocaine. The last count charged the same June 5 offense that was alleged in the first indictment, and hence it was dismissed by the government after appellant was found guilty on that charge in the first trial. The other four counts, however, charged offenses occurring on a different date, March 6. After a jury trial before Judge Winfield, appellant was found guilty on all four of those counts.

Officer Donald Bell of the Metropolitan Police testified that at about 3:20 p.m. on March 6, 1986, he and his partner, Officer Bradley Belden, were conducting an undercover narcotics investigation in the vicinity of 21st Street and Maryland Avenue, N.E.,

an area known for high-volume sales of narcotics. As Officer Bell was driving along 21st Street, he noticed three men, one of whom was appellant, standing together on the sidewalk. Bell testified that appellant was "handing" a tinfoil object to the man standing on his right. Just then, however, one of the three men turned his head and saw the officers' car driving past. Apparently recognizing the unmarked car as a police cruiser, he said something to his two companions. Immediately appellant, "who had the tinfoil and was handing it to one of the individuals, pulled his hand back with the tinfoil in his hand, brought it back to himself, pulled it back." It is clear from Bell's testimony that although appellant reached out toward the other man with the tinfoil in his hand, the tinfoil never actually left appellant's possession, and no money changed hands.

The officers did not stop but drove around the block. When they came back to the same spot on 21st Street, Officer Bell again saw appellant "standing at almost the same position," with his hand extended to one of the two men standing with him.[3] Bell could not discern what appellant was holding, but after he and Officer Belden stopped their car and got out, Bell could see a shiny object in appellant's right hand, even though it was closed. As Officer Bell attempted to pry the hand open, appellant threw three tinfoil packets on the ground. He was then arrested.

Testifying as an expert witness, Detective Lawrence Coates said that each tinfoil packet at issue contained PCP-laced marijuana and was of the average size sold on the street. The total weight of the PCP and marijuana seized was 1,212 milligrams, of which 21 milligrams was PCP. Coates stated that this was a usable amount of both PCP and marijuana. Although the quantity of PCP was small, Coates said, it

---

**3.** The trial judge, in an opinion and order denying appellant's motion for new trial, said that on their second approach the officers saw appellant "in the same posture with his hand open and extended toward the same man." Officer Bell's testimony, however, is ambiguous on this point. He testified that when he first drove past the three men, he saw appellant handing a tinfoil to "one of the two" men standing to his right. After Bell had driven around the block, he saw appellant with "his hand out again to one of the individuals who was standing there...." Bell never said (because nobody asked him) whether the person toward whom appellant extended his hand was the same man on both occasions.

was "enough for four to five dosage units."

Appellant's mother, who lived in an apartment at 903 21st Street, N.E., testified that she gave appellant $100 that day to buy two pairs of shoes.[4] She said she had never seen any tinfoils in her son's possession or in her apartment. The testimony of the only other defense witness, appellant's brother, was brief and of no relevance to this appeal.

At the conclusion of the defense case, defense counsel renewed an argument made earlier that the possession with intent to distribute (PWID) charges merged with the distribution charges. Counsel therefore asked that one set of charges be dismissed. Judge Winfield ruled, however, that the distribution and PWID charges did not merge, which she later reiterated in a memorandum opinion. In that opinion she pointed out that the evidence adduced to prove the two sets of crimes was different: the distribution charges were based on the testimony about appellant's outstretched hand containing a single tinfoil packet, whereas the PWID charges were based on his possession of the three tinfoil packets recovered after his arrest.

Although Judge King had sentenced appellant under the Youth Act in the first case, Judge Winfield decided to sentence him in the second case as an adult. At the sentencing hearing Judge Winfield said:

I don't look at you the way Judge King looked at you. You already had a Youth Act probation in 1985 and it was revoked, and I guess it wasn't even eight months later that you picked up the distribution of cocaine case; that's a mandatory minimum case. And Judge King gave you a Youth [Act] sentence because he saw something I don't see.

The report says that your adjustment on probation was poor, not only because of the rearrest, but because of your positive drug test and because you failed to report. You don't support your two children; you're smoking crack now; you

smoked PCP and marijuana since you were sixteen, that's three years; you're described as irresponsible and immature; you tested positive consistently while on probation, it reads. Even the youth study itself tells me things about you that aren't very good.

I just don't see how you'll benefit. I wanted to see how you benefited because my sentence, if it's an adult sentence, eliminates Judge King's. I don't see it; I don't see it anywhere.

Judge Winfield then sentenced appellant separately as an adult on each of the four counts.

## II

Appellant contends that his motion to suppress evidence in the first case should have been granted, that his convictions of possession of PCP and marijuana with intent to distribute those drugs merge with his convictions of distribution of the same drugs, and that the Youth Act is unconstitutional in that it requires a sentencing judge to provide a statement of reasons only when imposing a youth sentence. We shall address each contention in turn.

### A. *The Motion to Suppress*

■ Appellant argues that his conviction of distribution of cocaine must be reversed because, as he states in his brief, "the failure of the undercover officer to identify Mr. Allen [as the seller of the cocaine] was a fatal flaw requiring Mr. Allen's suppression motion to be granted...." Appellant's argument, not Officer Vanadia's testimony, is fatally flawed.

First, appellant mischaracterizes the evidence. Officer Vanadia did testify at the suppression hearing both that appellant sold her cocaine and that she identified appellant at the scene. Her direct testimony includes the following:

Q. ... [D]id you obtain anything *from Mr. Allen?*

A. Yes, I did. I obtained a package of cocaine, [it] was a white powder, and I

---

**4.** Officer Belden found $116 in appellant's pockets when he conducted a search incident to appellant's arrest.

field-tested it. It field-tested positive for cocaine. [Emphasis added.]

A moment later, when asked about appellant's arrest, Officer Vanadia said:

He came to the door, and they brought him out. I observed them bringing the exact same gentleman that I had all that conversation with out, down the stairs, and *that's when I identified him as being the person that was involved in my transaction.* [Emphasis added.]

Second, the two cases that appellant cites in his brief—*Crawley v. United States,* 320 A.2d 309, *rehearing en banc denied,* 325 A.2d 608 (D.C.1974), and *Middleton v. United States,* 401 A.2d 109 (D.C.1979)—do not stand for the proposition that an in-court identification is required at a suppression hearing. Those cases involve problematic in-court identifications of defendants *at trial. Crawley, supra,* 320 A.2d at 310–311; *Middleton, supra,* 401 A.2d at 131. In this case, not only Officer Vanadia but also two of her colleagues properly identified appellant at trial. Those identifications are not challenged on appeal.

This court has never required that an in-court identification of a defendant occur at a suppression hearing, and we see no reason to do so now. The only issue at a suppression hearing is whether the evidence at issue was properly obtained; such hearings "do not involve guilt or innocence." *Singletary v. United States,* 383 A.2d 1064, 1071 (D.C.1978) (citations omitted);[5] *accord, United States v. Speed,* 388 A.2d 892, 893 (D.C.1978) ("the government is not required to prove the defendant's guilt upon a motion to suppress evidence, but only that the evidence was properly recovered"). Appellant has not persuaded us that this function would be better served by a new requirement of an in-court identification of the defendant at a suppres-

sion hearing. Since appellant raises no other issue related to his motion to suppress evidence, we conclude that Judge King committed no error in denying that motion.

### B. *Merger*

■■■ Appellant's primary contention on appeal is that he cannot be convicted of possession with intent to distribute and distribution of "the same drugs in the same place to the same person [6] at approximately the same time." He argues that the two pairs of offenses in the second case (distribution and possession with intent to distribute) arose from a single transaction, so that separate convictions are barred by "both the merger doctrine and double jeopardy analysis." We hold, to the contrary, that the two pairs of offenses arose from separate acts, and that appellant's argument is therefore without merit. It is settled law that the doctrine of merger "does not apply where the offenses arise out of separate acts or transactions." *Villines v. United States,* 320 A.2d 313, 314 (D.C. 1974) (citation omitted); *accord, Logan v. United States,* 460 A.2d 34, 36 (D.C.1983). This court has also held that the Double Jeopardy Clause of the Fifth Amendment does not prohibit "separate and cumulative punishment for separate criminal acts." *Owens v. United States,* 497 A.2d 1086, 1094–1095 (D.C.1985), *cert. denied,* 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986).

■■■ The evidence at the second trial showed that appellant extended his hand containing one tinfoil object to the man standing to his right, then pulled that hand (still containing the tinfoil) back toward his body when he and his companions saw the officers driving by in their unmarked, but apparently recognizable, police car. This act, which was completed when appellant

---

5. Indeed, we held in *Singletary* that a defendant's presence was not required at a suppression hearing by either the Confrontation Clause of the Sixth Amendment or Super.Ct.Crim.R. 43, and that "a defendant's right to be present at a pretrial suppression hearing may be waived or forfeited...." 383 A.2d at 1071 (citations omitted).

6. As we have pointed out, *supra* note 3, it is not clear from the testimony whether the man to whom appellant was extending his hand on the second occasion was the same one to whom he had reached out on the first occasion ("A") or whether it was the other man ("B"). Our holding, however, does not depend on whether the intended distributee in the second transaction was A or B; it would be the same in either event.

withdrew his hand, constituted a distribution[7] of PCP and marijuana[8] in violation of D.C.Code § 33–541(a)(1). Then, after the officers drove around the block, they arrested appellant for what appeared to be a second distribution and found three tinfoil packets of PCP-laced marijuana in his possession. Appellant's possession of these three packets constituted a different criminal act.

What makes these two separate offenses rather than one is the passage of an appreciable period of time between the act of distribution and the later act of possessing three tinfoil packets with intent to distribute. Although that interval was not a long one, it was long enough to enable the police officers to drive around the block. Sometime during that interval, appellant reached the "fork in the road" of which we spoke in *Owens, supra,* 497 A.2d at 1096. After the car disappeared around the corner, appellant could have chosen to put his drugs away and go home. Instead, however, he decided to try again to distribute his drugs to a prospective customer. This decision, made after the first attempt was completed, was the product of a new criminal impulse and thus was punishable separately from the earlier act of handing the tinfoil to the man on his right. "Thus we hold that appellant's two [pairs of] convictions were based on two separate criminal acts, one of which ended before the other began." *Id.* at 1097; accord, *Jones v. United States,* 362 A.2d 718, 719–720 (D.C.1976) (taking money from cash register and from salesclerk's purse held to be two separate

offenses, even though there was only one victim).[9] *See also Smith v. United States,* 549 A.2d 1119, 1121 n. 1 (D.C.1988) ("no merit" in challenge to separate convictions of distribution and possession with intent to distribute, when evidence showed that defendant sold one packet of drugs but retained plastic bag containing more drugs); *United States v. Palafox,* 764 F.2d 558, 563 (9th Cir.1985) (en banc) ("an individual ... who hands a sample [of drugs] to a passerby and who possesses the remainder with the intent to distribute it to others should receive multiple punishments"); *United States v. Carter,* 576 F.2d 1061, 1064 (3d Cir.1978).

Appellant's reliance on *Briscoe v. United States,* 528 A.2d 1243 (D.C.1987), is misplaced. That case stands for the unremarkable proposition that a defendant cannot be convicted of two counts of possession of a controlled substance with intent to distribute it when two quantities of the controlled substance are found in the same place at the same time. In *Briscoe* police officers, executing a search warrant, found marijuana in the kitchen and marijuana in the bedroom of the defendant's apartment; we held that his possession of both quantities was a single criminal act, punishable only once. *Accord, Brown v. United States,* 542 A.2d 1231, 1234 (D.C.1988). But the rationale of *Briscoe* does not extend to the situation in the case at bar, which involved separate criminal acts occurring in the same place *but not at the same time.* Because the distribution charge was based on conduct occurring a

---

7. D.C.Code § 33–501(9) (1988) defines "distribute" as the "actual, constructive, *or attempted* transfer" of a controlled substance from one person to another (emphasis added), so that an attempt is punishable as if it were a completed act.

8. Under *Corbin v. United States,* 481 A.2d 1301 (D.C.1984), two violations of section 33–541(a)(1) occurred when appellant distributed PCP-laced marijuana. Likewise, appellant's possession of PCP-laced marijuana with intent to distribute constituted two offenses.

9. An analogy may be found in the law of homicide. In order to convict someone of first-degree murder, the government must prove both premeditation and deliberation. Deliberation requires the passage of some "appreciable time"

between the formation of the design to kill and the fatal act, *Austin v. United States,* 127 U.S. App.D.C. 180, 186, 382 F.2d 129, 135 (1967), but that time may be brief. No particular length of time is necessary for deliberation, for it is not the lapse of time itself but the defendant's reflection on the previously formed design to kill, the turning over of that design in the defendant's mind, that constitutes deliberation. *Harris v. United States,* 375 A.2d 505, 508 (D.C. 1977), citing *Austin, supra.* Likewise in the instant case, there was an appreciable time between the end of the first criminal episode and the beginning of the second, during which appellant had an opportunity to form, and did form, a new criminal intent.

few moments before the possession with intent to distribute, *Briscoe* does not apply.[10]

We hold, accordingly, that because the two sets of offenses were separated by an appreciable period of time, they are punishable separately. There was no merger, and the Double Jeopardy Clause does not require any corrective action.

Having said this, we add a word of caution. It is self-evident that every distribution of an unlawful drug is immediately preceded by possession of that same drug with intent to distribute it. We would not look kindly upon a prosecution that attempted to subdivide such an event into two parts, focusing first on the period before the sale (and charging PWID) and then on the sale itself (and charging distribution). The sale and its prologue would thus be converted from one crime into two, and the defendant could theoretically be subject to two mandatory minimum sentences rather than just one. We strongly doubt that this is what the legislature intended. *See United States v. Lewis*, 200 U.S.App.D.C. 76, 81, 626 F.2d 940, 945 (1980) (counts charging distribution "implicitly include possession and intent to distribute the drugs as essential elements"); *United States v. Hernandez*, 591 F.2d 1019, 1022 (5th Cir.1979) (en banc) (when intent to distribute is fulfilled by a sale of the drug, PWID charge merges into distribution charge). In the instant case, of course, no such problem is presented, for appellant's distribution of one packet preceded, by an appreciable time, his possession of the three packets a few minutes later. We think it appropriate, nevertheless, to note our concern about the risk of such prosecutorial overkill and to suggest that the logic of our decision today, and of

cases like *Smith* and *Palafox*, cannot be extended much further.

### C. *The Youth Act*

■ Finally, we reject appellant's challenge to the Youth Act. Appellant argues that the relevant provision of the Youth Act, D.C.Code § 24–803(c) (1989), is "fundamentally unfair" and violates the Due Process Clause of the Fifth Amendment because it requires a sentencing judge to provide a statement of reasons only when imposing a youth sentence, but not when imposing an adult sentence.[11] He contends that a statement of reasons is especially needed in this case because Judge Winfield's adult sentence had the effect of nullifying Judge King's youth sentence.

Whatever merit this argument may or may not have in the abstract,[12] appellant ignores the fact that Judge Winfield did provide him with an explicit statement of the reasons why he would not be sentenced under the Youth Act, which we have quoted at page 656, *supra*. After reviewing the presentence report with defense counsel and giving appellant an opportunity to allocute, Judge Winfield placed on the record her reasons for declining to follow the lead of Judge King, even though she was under no statutory obligation to do so. Acknowledging that she was faced with "a tough sentencing," the judge carefully considered other alternatives before deciding to impose an adult sentence. The record reflects a sensitive, well-informed decision by a conscientious trial judge. *See Cambrel v. United States*, 330 A.2d 746, 749 (D.C.1975).

Because Judge Winfield provided appellant with the very relief that he seeks, we need not consider his constitutional arguments. *See United States v. Raines*, 362

---

**10.** *Hicks v. District of Columbia*, 234 A.2d 801 (D.C.1967), is inapposite for the same reason.

**11.** D.C.Code § 24–803(c) (1989) provides:

Where the court finds that a person is a youth offender and determines that the youth offender will derive benefit from the provisions of this chapter, the court shall make a statement on the record of the reasons for its determination. The youth offender shall be entitled to present to the court facts that

would affect the decision of the court to sentence the youth offender pursuant to the provisions of this chapter.

**12.** In *Johnson v. United States*, 391 A.2d 1383 (D.C.1978), we rejected a similar argument, affirming an adult sentence by one judge which had the effect of nullifying a Youth Act sentence by another judge. It does not appear, however, that any constitutional issues were raised in *Johnson*.

U.S. 17, 21–22, 80 S.Ct. 519, 522–23, 4 L.Ed.2d 524 (1960); *Leiss v. United States,* 364 A.2d 803, 807 (D.C.1976) ("decisions of constitutional dimension are made only as specifically required by the facts of an actual controversy," citing *Raines* ), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977).

### III

In Nos. 86–1567, 88–1010, 88–1578, and 89–711 the appeals are dismissed; see note 1, *supra.* In Nos. 86–1566 and 87–371 the judgments are affirmed.

*Affirmed in part, dismissed in part.*