Gregory MINOR, Appellant,

v.

UNITED STATES, Appellee.

No. 91–CF–1014.

District of Columbia Court of Appeals.

Argued Nov. 24, 1992.
Decided April 27, 1993.

---

Phyllis Joan Baron, Silver Spring, MD, appointed by the court, for appellant.

Kenneth L. Wainstein, Asst. U.S. Atty., argued for appellee. Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas L. Black, and Sherri L. Evans, Asst. U.S. Attys., and William J. Landers, Asst. U.S. Atty., Wash-

ington, DC, at the time the brief was filed, were on the brief, for appellee.

Before TERRY, STEADMAN, and KING, Associate Judges.

PER CURIAM:

Appellant, convicted of distribution of heroin,[1] possession of heroin,[2] and possession of drug paraphernalia,[3] contends on appeal that the trial court erred in failing to give three jury instructions that he requested. He argues first that, with respect to the first count of the indictment, the court improperly refused to give an instruction on possession of heroin as a lesser included offense within the crime of distribution. Second, he maintains that he was entitled to an instruction on the primary theory of his defense, namely, that he was acting as an "agent of the buyer" in the underlying heroin sale and therefore lacked the requisite intent to commit the crime of distribution. Finally, appellant argues that the trial court erred when it refused to instruct on his secondary defense of entrapment, when the government's evidence showed that an undercover police officer "induced" the heroin sale by asking appellant about the availability of the drug. We reject all three claims of error and affirm appellant's convictions.

I

Appellant Minor was arrested after participating in the sale of heroin to an undercover police officer. The evidence showed that Officer John Marsh of the United States Park Police, while working under cover, parked his unmarked car early one evening at an intersection near Anacostia Park, a known heroin market. Minor, who was standing on the opposite side of the street with a small group of people, made eye contact with the officer and then approached his car. When Marsh asked him about the availability of drugs,[4] Minor

went back across the street and spoke to an unidentified woman. He then returned to the officer's car and told Marsh that a certain type of heroin known as "O.D." was available. Minor asked, "Do you want some of that, you interested in that?" Marsh replied that he was and that he would "take a couple of bags." Minor started back toward the woman, but as he walked in her direction, the woman got into a car and drove away.

Minor then approached a man named James Beaner, and Beaner and Minor together returned to Marsh's car. Minor asked Marsh how many bags he wanted, and Marsh responded by asking how much they cost. Minor quoted a price of $25 per bag and then stepped aside, letting Beaner make the actual sale. Beaner gave the officer two bags of heroin, and the officer gave Beaner $50 in return. As Beaner and Minor walked back across the street together, Marsh testified, "there was some kind of exchange between them as they were walking." When they were about halfway across the street, Minor turned and walked back to Officer Marsh. Minor asked Marsh whether he needed any syringes, but Marsh said he did not and drove off.

Officer Marsh promptly broadcast a description of Minor and Beaner to a waiting arrest team. Both men were arrested and later identified by the undercover officer.[5] A search of Minor's person revealed a small amount of cash, including a pre-recorded $10 bill (which had been used with two pre-recorded $20 bills to purchase the heroin from Beaner and Minor), other heroin, and syringes.

II

"As a general proposition a defendant is entitled to an instruction as to any

1. D.C.Code § 33–541(a)(1) (1988).

2. D.C.Code § 33–541(d) (1988).

3. D.C.Code § 33–603(b) (1989).

4. Officer Marsh asked Minor, "Is there anything out?", and Minor replied by asking, "What [are] you looking for?" Marsh, understanding this as an indication that heroin was available, said that he wanted to get "a couple of bags." Minor

"said okay, that he could help me out. He said he would be right back."

5. Beaner was charged with various offenses, not specified in the record, based on his involvement in this transaction. He later entered a guilty plea and was not involved in Minor's trial.

recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988) (citations omitted); *accord, e.g., Adams v. United States*, 558 A.2d 348, 349 (D.C.1989); *Gray v. United States*, 549 A.2d 347, 349 (D.C.1988). This standard applies here to our review of the trial court's refusal to give each of the requested instructions. *See, e.g., Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973) (lesser included offense instruction); *Montgomery v. United States*, 384 A.2d 655, 661 (D.C. 1978) (theory of defense instruction); *Mathews v. United States, supra*, 485 U.S. at 63, 108 S.Ct. at 887 (entrapment instruction). In determining whether the evidence before the jury supported any of appellant's requests, we must view that evidence in the light most favorable to appellant. *Adams v. United States, supra*, 558 A.2d at 349.

### A. *The lesser included offense instruction*

Minor contends that the trial court, in charging the jury on the count alleging distribution of heroin, should also have given an instruction on the lesser included offense of possession. His theory seems to be, at least in part, that if he is deemed to be an agent of the buyer rather than an agent of the seller (a matter which we address in part B, *infra*), then he is guilty only of aiding and abetting simple possession—*i.e.*, the possession of the buyer—and not aiding and abetting the distribution of the seller.

---

**6.** Minor asserts that the "agent of the buyer" defense was supported by the government's evidence. Among the government's witnesses was an expert who testified about the manner of street-level distribution of narcotics. The expert opined that Minor's role in the underlying transaction was that of a "juggler," *i.e.*, a middleman. "Jugglers," he said, "are usually freelancers." Typically, they receive from the seller, as a commission, either a small percentage of the sale price or a quantity of the drug itself. The expert acknowledged, however, that "sometimes" jugglers work for the buyer of drugs and receive a similar reward for their services from the buyer, not the seller.

Our concurring colleague suggests that such an instruction is precluded as a matter of law because possession "can never be a lesser included offense of distribution...." *Post* at 1188. We deem it sufficient to observe, however, that before the jury could find, on this record, that Minor was guilty of possession but not distribution, it would have to engage in the sort of "bizarre reconstruction" of the facts which we have repeatedly disapproved. *Anderson v. United States*, 490 A.2d 1127, 1130 (D.C. 1985); *accord, e.g., Lampkins v. United States*, 515 A.2d 428, 432–433 (D.C.1986). We hold accordingly that there was not "a sufficient evidentiary basis for the lesser charge," *Rease v. United States*, 403 A.2d 322, 328 (D.C.1979) (citations omitted), and do not reach the issues raised in the concurring opinion.

### B. *The "agent of the buyer" instruction*

Minor argues next that the trial court erred in refusing to instruct the jury on the principal theory of his defense. He sought a jury instruction that his defense was that he was acting as an "agent of the buyer," *i.e.*, the undercover officer, rather than the seller, and therefore that he lacked the requisite intent to distribute the heroin.[6] The trial court refused to give this instruction on the ground that, under District of Columbia law, "distribution" occurs regardless of whether one aids the seller or the buyer. *See Griggs v. United States*, 611 A.2d 526, 528–529 (D.C.1992).[7] The court offered instead to instruct the jury that the theory of the defense was that Minor lacked the intent to commit the crime of distribution. Defense counsel accepted the

---

**7.** In denying defense counsel's request, the trial court said:

Contrary to the defendant's suggestion, it doesn't matter whether the defendant acted as an agent [of] the undercover officer, Marsh, or of Mr. Beaner, because his purpose, even accepting his theory of the case, was to facilitate the transfer of heroin to Officer Marsh.... His purpose was to facilitate the delivery or transfer of the drugs, and that being so, if the jury credits that, his conduct subjects [him] to liability for distribution and not for possession.

court's offer, and the jury was instructed accordingly.

■ As we have said, it is settled law that a defendant is usually entitled to an instruction on "any recognized defense for which there exists sufficient evidence for a reasonable jury to find in his favor." *Mathews, supra,* 485 U.S. at 63, 108 S.Ct. at 887 (citations omitted). This standard limits a defendant's entitlement to an instruction on the theory of the defense in two fundamental ways. First, the proffered defense must be "recognized" as a valid defense under the law; second, "sufficient evidence" supporting it must be presented before the jury. We need look no further than the first of these two limitations to conclude that the trial court properly denied Minor's request for an "agent of the buyer" instruction, because the law is clear that being an agent of the buyer is not recognized as a valid defense to a charge of distributing a controlled substance.

■ Distribution is defined by statute to mean "the actual, constructive, or attempted transfer from one person to another . . . of a controlled substance, *whether or not there is an agency relationship.*" D.C.Code § 33–501(9) (emphasis added). The statute on its face does not define distribution in terms of a *sale* of narcotics. The language instead proscribes a broader range of conduct, *i.e.,* any act effecting the *transfer* of narcotics from one person to another. *See Long v. United States,* 623 A.2d 1144, 1147–1148 (D.C.1993); *Chambers v. United States,* 564 A.2d 26, 31 n. 10 (D.C.1989) ("[a] sharing, or even a gift, of a controlled substance is enough to consti-

tute a distribution"). Thus it makes no difference under the statute whether a middleman who distributes or transfers narcotics to another, or who (like Minor here) participates in the sale with the seller by bringing the seller to the buyer and by quoting the seller's price to the buyer, is an agent of the buyer or the seller. The guilt of such a middleman results from his participation in the transaction in any capacity and, as the statute makes explicit, is not defeated by the existence of an agency relationship between the middleman and any other party to the transfer.

This interpretation of our statute is consistent with case law under the corresponding federal statute, 21 U.S.C. § 841(a) (1988).[8] The "agent of the buyer" or "purchasing agent" defense originated under the predecessor federal statute, "which made it unlawful to 'sell, barter, exchange, or give away narcotic drugs . . . .' " *United States v. Bailey,* 164 U.S.App.D.C. 310, 312 n. 1, 505 F.2d 417, 419 n. 1 (1974) (quoting former 26 U.S.C. § 4705(a)), *cert. denied,* 420 U.S. 961, 95 S.Ct. 1350, 43 L.Ed.2d 438 (1975). That provision was interpreted by some courts to allow a defendant to "avoid culpability under the statute by proving that in a given sale in which he was an intermediary he was acting as an agent for the ultimate purchaser rather than as a seller himself." *Id.* (citations omitted).

There is uniform agreement among the federal courts that the "agent of the buyer" defense was eliminated in 1970 when Congress repealed 26 U.S.C. § 4705(a) and put in its place the law that exists today. *See United States v. Porter,* 764 F.2d 1, 12 (1st Cir.1985) (collecting cases). The 1970 enactment[9] effected this change by "sub-

---

**8.** We may look to decisions interpreting an identical, or substantially identical, federal statute as persuasive authority in interpreting its local counterpart. *See In re Mendes,* 598 A.2d 168, 169 (D.C.1991) (noting that D.C.Code § 33–541(a)(1) is identical to 21 U.S.C. § 841(a)). The only difference here between federal law and District of Columbia law is that, under the former, the term "distribute" is defined as meaning "to deliver" a controlled substance. 21 U.S.C. § 802(11) (1988). Under our local statute, "distribute" is defined to mean "the actual, constructive or attempted transfer . . . of a con-

trolled substance, whether or not there is an agency relationship." D.C.Code § 33–501(9). This difference is of no moment, however, because the federal statute defines "deliver" to encompass "the actual, constructive, or attempted transfer of a controlled substance . . . whether or not there exists an agency relationship." 21 U.S.C. § 802(8) (1988).

**9.** Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub.L. No. 91–513, 84 Stat. 1236 (1970). Section 1101(b)(3) of this act, 84 Stat. 1292, repealed the entire subchapter of the

stituting the concept of 'distribution' in place of the operative concept of a 'sale,' a result consistent with Congress' intent to penalize severely individuals engaged in procuring drugs for others, while providing less serious penalties for those involved in personal drug abuse." *United States v. Swiderski*, 548 F.2d 445, 451 (2d Cir.1977); *accord, Long v. United States, supra,* at 1149 n. 10 (same); *see id.* at 1149–1151 & n. 14 (observing that an intent to penalize distributors more severely than users also underlies District law); *Gorham v. United States*, 339 A.2d 401, 406 (D.C.1975) (en banc).[10]

█ Considering both the statutory language in the definition of "distribute," D.C.Code § 33–501(9), and the reasons given by other courts for rejecting the "agent of the buyer" defense under analogous federal law, we hold that being an agent of the buyer is not a defense to a charge of distribution of a controlled substance under D.C.Code § 33–541(a)(1). It follows that the trial court committed no error when it refused to instruct the jury on that proffered defense when Minor's counsel requested such an instruction.

### C. *The entrapment instruction*

█ Finally, Minor contends that the jury should have been instructed on the defense of entrapment. He premises his argument on the fact that the government's evidence established that the undercover officer initiated the conversation and specifically asked about the availability of heroin. Minor is correct that, as a general proposition, a defense request for a jury instruction may be based on evidence offered by either the government or the defendant. *See, e.g., Reid v. United States*, 581 A.2d 359, 367 (D.C.1990); *Harling v. United States*, 387 A.2d 1101, 1103 n. 1 (D.C.1978). He is incorrect, however, when

he suggests that the officer's instigation of the drug sale, without more, entitled him to an entrapment instruction. We agree with the trial court that there was no "basis in law or in fact for any entrapment instruction in this case."

█ A jury may be instructed on the affirmative defense of entrapment when there is sufficient evidence of government inducement of the crime *and* a lack of predisposition on the part of the defendant to engage in that criminal conduct. *Mathews v. United States, supra,* 485 U.S. at 63, 108 S.Ct. at 887. We are mindful that, as a general matter, the determination of whether entrapment has occurred is ordinarily an issue reserved for the fact-finder. *E.g., German v. United States*, 525 A.2d 596, 612 n. 34 (D.C.), *cert. denied*, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987). We hold, however, that in this case the government's evidence was insufficient— Minor presented no evidence of his own—to justify an entrapment instruction.

The mere fact that the undercover officer initiated the conversation which led to the heroin sale did not entitle Minor to an entrapment instruction. The Supreme Court made this clear in *Mathews:* "evidence that Government agents merely afforded an opportunity or facilities for the commission of the crime [is] insufficient to warrant such an instruction." 485 U.S. at 66, 108 S.Ct. at 888. As this court held almost twenty years ago, an entrapment instruction is not required by "a showing of police conduct which purportedly induced or instigated the commission of a crime merely by offering an opportunity to do so or by 'playing along' with one considering an illegal act." *Williams v. United States*, 342 A.2d 367, 369 (D.C.1975) (citing *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)); [11] *see*

United States Code of which 26 U.S.C. § 4705 was a part.

**10.** Thus, under federal law, the purchasing agent who delivers narcotics to his or her principal, *i.e.,* the buyer, is punishable as a distributor, even though the principal is guilty only of possession absent evidence of an intent to dis-

tribute the narcotics to someone else. *Swiderski, supra,* 548 F.2d at 451.

**11.** Reaffirming prior case law, the Supreme Court said in *Russell,* "It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." 411

*Kronstadt v. District of Columbia,* 155 A.2d 76, 77 (D.C.Mun.App.1959). "Thus, an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs, and, if the offer is accepted, make an arrest on the spot or later." *Jacobson v. United States,* — U.S. —, —, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 174 (1992). Moreover, the officer's conduct clearly was not entrapment as a matter of law. *See Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819–821, 2 L.Ed.2d 848 (1958) ("Solicitation alone . . . does not establish entrapment, nor is it illegitimate for the government to set a 'trap for the unwary criminal'" (footnote omitted)).

Minor relies heavily on *United States v. Rippy,* 196 U.S.App.D.C. 243, 247, 606 F.2d 1150, 1154 (1979), which of course is not binding on this court. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). Even if it were, it would not support Minor's argument. In *Rippy* the jury was instructed on the entrapment defense but nevertheless found the defendant guilty. He argued on appeal that he had been entrapped as a matter of law because the police had solicited the sale of drugs. Since Minor does not contend that he was entrapped as a matter of law, *Rippy* is inapposite here.

 Moreover, under District of Columbia law, before the court may give an entrapment instruction, there must be evidence that the defendant was "wholly without criminal intent when he join[ed] the police in the commission of [the] crime," *i.e.,* that he lacked a predisposition to commit the charged offense. *Williams v. United States, supra,* 342 A.2d at 369. Predisposition "focuses on whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews, supra,* 485 U.S. at 63, 108 S.Ct. at 887 (citations omitted); *accord, Riley v. United States,* 298

U.S. at 436, 93 S.Ct. at 1645. As we explained in *Williams, supra:*

[O]nly where creative governmental activity instills the criminal notion in an *otherwise innocent* individual may an entrapment defense properly lie. A defendant claiming en-

A.2d 228, 233 (D.C.1972), *cert. denied,* 414 U.S. 840, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973).

 The testimony was uncontroverted that Minor initiated the contact with Officer Marsh by approaching the officer's car, that Minor had to seek out two different sellers before he found one who had drugs for sale, that Minor asked Marsh how many bags of heroin he wanted and quoted the price per bag, that Minor accepted money from Beaner after the sale was consummated, and that he approached the officer a second time and asked if he needed any syringes. This evidence, even when viewed in the light most favorable to the defense, simply does not permit a finding that Minor lacked a predisposition to participate in the distribution of illegal narcotics. We hold, accordingly, that there was no basis in the evidence for an entrapment instruction and that the trial court did not err in refusing to give one.

*Affirmed.*

TERRY, Associate Judge, concurring:

I join fully in the court's opinion, but I would go one step further. I would hold that, as a matter of law, possession is not and can never be a lesser included offense of distribution because there is no overlap between the two offenses.

"A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965) (citations omitted). More recently, the Supreme Court has refined this test by stating that the elements of the lesser offense must be "a subset of the [greater] charged offense." *Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989). I understand this "subset" language to mean simply that

trapment must be more than unaware of the fact that the subject activity will lead to his arrest; he must be *wholly without criminal intent* when he joins the police in the commission of a crime.

342 A.2d at 369 (emphasis added).

in proving the greater offense, the government must also prove all the elements of the lesser offense. *See Rease v. United States*, 403 A.2d 322, 328 (D.C.1979).[1] I would hold that, under this test, possession (a misdemeanor) is not and cannot be a lesser included offense of distribution (a felony) because all the elements of possession need not be proved in order to convict someone of distribution.

Although the *mens rea* is the same for both offenses ("knowingly or intentionally"),[2] the *actus reus* is altogether different. Possession is not defined by statute, but case law has established that it consists of either direct physical custody (actual possession) or the ability to exercise dominion and control over the thing possessed (constructive possession). *Hack v. United States*, 445 A.2d 634, 639 (D.C.1982); *see Parker v. United States*, 601 A.2d 45, 51–52 (D.C.1991); *Bernard v. United States*, 575 A.2d 1191, 1195–1196 (D.C.1990). Distribution, on the other hand, is statutorily defined as a *change* of possession, "the actual, constructive, or attempted transfer" of a drug from one person to another. D.C.Code § 33–501(9) (1988). To sustain a charge of distribution, the government must prove only a knowing or intentional transfer (or attempted transfer) of the drug; the act of possession before or after the transfer need not be proved because it is not part of the act of distribution. Hence, although such possession will be incidentally proved in most distribution cases, such proof is superfluous because possession is not an element—under *Schmuck*, it is not a "subset"—of distribution.

Minor contends that possession is a lesser included offense of distribution because one must invariably possess the controlled substance in order to distribute it. While that is usually true, this court's decision in *Allen v. United States*, 580 A.2d 653 (D.C. 1990), makes clear that the possession and the distribution are two distinct acts that occur in sequence, not simultaneously. We said in *Allen*: "It is self-evident that every distribution of an unlawful drug is *immediately preceded by* possession of that same drug with intent to distribute it." *Id.* at 659 (emphasis added). We characterized the possession of the drug as the "prologue" to the distribution, suggesting that in theory, at least, the possession might even be charged as a separate offense. *Id.*[3] The same analysis defeats Minor's argument here. Under *Allen*, the possession ends at the instant the distribution begins, so that the two offenses can never overlap. It follows that possession is not, and cannot logically be, a lesser included offense of distribution, and that Minor's requested instruction was properly denied.[4]

1. We said in *Rease:*
 A defendant is entitled to a lesser-included offense instruction when (1) *all elements of the lesser offense* are included within the offense charged, and (2) there is a sufficient evidentiary basis for the lesser charge.
 403 A.2d at 328 (citations omitted and emphasis added).

2. D.C.Code § 33–541(a) makes it a crime "knowingly or intentionally" to distribute a controlled substance. D.C.Code § 33–541(d) makes it a crime "knowingly or intentionally" to possess a controlled substance (with certain limited exceptions).

3. We cautioned, however, against "subdivid[ing]" such an event into two parts" for the purpose of prosecuting the possession and the distribution as two separate crimes, suggesting that such an approach would amount to "prosecutorial overkill...." *Allen, supra,* 580 A.2d at 659.

4. Some confusion may have resulted from the fact that an annotation to the standard jury instruction on distribution erroneously identifies simple possession as a lesser included offense. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.33 (3d ed. 1978). The instructions contained in this volume, commonly known as the "red book," are of course "not the law"; the red book itself is "only a resource for jury instructions." *Thomas v. United States,* 619 A.2d 20, 27 (D.C.1992). It appears that this is one of those "rare instance[s]" in which "the editors of the red book erred." *Tibbs v. United States,* 507 A.2d 141, 145 (D.C.1986).