Gerald A. HANNA, Appellant,

v.

UNITED STATES, Appellee.

Lamark SIMMONS, Appellant,

v.

UNITED STATES, Appellee.

Nos. 92–CF–133, 92–CF–
250 and 94–CO–634.

District of Columbia Court of Appeals.

Argued Sept. 14, 1995.
Decided Oct. 12, 1995.

Noel F. Danto, Rockville, MD, appointed by the court, for appellant Hanna. Stephen O. Russell, Oxon Hill, MD, filed a brief for appellant Hanna.

Thomas G. Ross, Riverdale, MD, appointed by the court, for appellant Simmons.

Paul A. Quander, Assistant United States Attorney, with whom Eric H. Holder Jr., United States Attorney, and John R. Fisher, Thomas C. Black and Randall D. Eliason, Assistant United States Attorneys, were on the brief, for appellee.*

Before FERREN, FARRELL, and KING, Associate Judges.

FERREN, Associate Judge:

Appellants were each convicted of twenty criminal charges arising out of the June 4, 1991 robbery of an apartment building at 228 N Street, N.W., in which residents of the building were held captive and terrorized.[1] Appellants were sentenced to a total of 21 to 63 years in prison.

This appeal presents primarily the question whether particular convictions merge under the principles announced by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and by this court in *Byrd v. United States,* 598 A.2d 386 (D.C.1991) (en banc). Appellants contend that all their convictions merge into one count of first degree burglary and one count of possession of a firearm during a crime of violence and that they may be sentenced accordingly on those two counts only. We conclude that (1) Counts F and G merge into one count of first degree burglary; (2) Counts M and N merge into one count of first degree burglary; and (3) Counts O, P, R, and S merge into one count of assault with a dangerous weapon. We reject all of appellants' other merger arguments. Further, we conclude that the trial court erred in ruling that the sentence enhancement provisions of D.C.Code § 22–3202 (1989 Repl.) did not apply to the convictions for crimes of violence (Counts D, E, H, I, J, K, O, Q, T).

Appellants also maintain there is insufficient evidence to support their convictions.

* Appellee's original brief in this case was filed in June, 1993. At that time the United States was represented by *Odessa P. Jackson,* Assistant United States Attorney, with whom *J. Ramsey Johnson,* United States Attorney, and *John R. Fisher, Thomas C. Black* and *Randall D. Eliason,* Assistant United States Attorneys, were on the brief.

1. A third co-defendant, Kenneth Wray, was convicted of the same charges as appellants Hanna and Simmons. All three cases were consolidated for appeal. Wray, however, then moved to dismiss his appeal, which was accomplished on August 15, 1994. *Wray v. United States,* No. 92–CF–99 (D.C. Aug. 15, 1994) (order granting motion to dismiss appeal).

To the contrary, we conclude that the government introduced sufficient evidence at trial for a reasonable juror to have found appellants guilty beyond a reasonable doubt on each charge.

 We remand the case to the trial court for resentencing in accordance with this opinion.[2]

### I.

The government presented the following evidence at trial. At approximately 10:30 p.m. on June 4, 1991, a group of five to seven men approached Alfredo Sarinana and Michael Leslie as they sat on the steps of the apartment building at 228 N Street, N.W. The men pulled out machine guns and told Sarinana and Leslie not to move. Two of the men then grabbed Sarinana and Leslie, took them inside the building, placed them against a wall, made them empty their pockets, and questioned them about drugs, money, and someone named "Miami." The two men then walked Sarinana and Leslie at gunpoint to apartment 201 where Sarinana and Leslie lived.

Four or five armed men entered apartment 201 behind Sarinana and Leslie. The armed men ran over to a man, who was in the apartment watching television, Jeff Bur-

ko, "stuck a gun in his face [and] start[ed] asking him where the drugs were and where the money was." As they searched the apartment, one of the gunmen, later identified as former co-appellant Wray, threatened to assault Leslie in order to force him to remember where the drugs and money were located. One of the robbers also suggested that they shoot Sarinana and Leslie.

At this time, Patrick Nutt, June Rose Watson, and an individual named "Tony" returned from a trip to Chinatown. As they passed apartment 201, Nutt saw someone coming out of the apartment and asked, "Who is that?" One of the robbers responded, "I'm a friend of Jeff's." Several of the intruders, including Hanna, Simmons, and Wray, followed Nutt, Watson, and Tony up the stairs. The robbers held Nutt and Watson at gunpoint with a machine gun while they attempted to kick in the door to apartment 302. They questioned Watson and Nutt about the individual known as "Miami" and about drugs and money. Appellant Hanna removed a gold rope chain from Nutt's neck.

Several of the gunmen then took Nutt downstairs at gunpoint and sat him down in front of apartment 201. At this time Diana Kirkland, who lived in apartment 203, and

---

2. On September 14, 1993, five months after filing his original brief on appeal, appellant Simmons filed a pro se "Motion to Vacate Sentence" alleging ineffective assistance of trial counsel under D.C.Code § 23–110 (1989 Repl.). Simmons alleged that trial counsel was ineffective by: (1) failing to use available means of undermining the identification testimony of government witnesses; (2) failing to request the court to instruct the jury on evaluating identifications by witnesses; (3) refusing to allow Simmons to be present at voir dire examinations held at the bench; and (4) failing to investigate the facts adequately and to present alibi witnesses. In response to appellant's motion this court issued a stay of the appellate proceedings on October 19, 1993. On April 18, 1994, the trial court denied the § 23–110 motion without a hearing. The appeal of that denial was consolidated with appellants' direct appeal.

Simmons contends the trial court erred in denying his § 23–110 motion without a hearing. We cannot agree. "Where the existing record provides an adequate basis for disposing of the [§ 23–110] motion, the trial court may rule on the motion without holding an evidentiary hear-

ing." *Ready v. United States,* 620 A.2d 233, 234 (D.C.1993). The trial court stated that Simmons' claims of ineffective assistance were "either belied by the record or are vague and conclusory and thus do not merit a hearing." We see no record basis for concluding that the trial court erred in reaching this conclusion. The only contention not clearly resolvable on the record is Simmons' alleged request that his trial counsel arranged for him to appear at the bench during voir dire. Even if Simmons made the request and counsel rejected it, there was not sufficient prejudice to warrant reversal under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The trial court also did not err when it failed to appoint counsel to represent appellant Simmons on his ineffective assistance claim. The court has no obligation to appoint counsel to represent a defendant on a § 23–110 motion when the court properly determines that the motion can be decided without a hearing. *Doe v. United States,* 583 A.2d 670, 672 (D.C.1990) ("In order to demonstrate a need for the appointment of counsel, a petitioner usually must satisfy the same criteria that would entitle the petitioner to a hearing on the § 23–110 motion ...").

her sister, Rosslyn Kirkland, heard some banging at the front of the building and went to investigate. On the way they saw appellant Simmons standing in front of the door to apartment 201, a second man with a gun in his pocket, and Nutt sitting by the radiator with his hands in the air. Nutt told the Kirkland sisters to go back inside Diana Kirkland's apartment, which they did.

Soon thereafter, all of the gunmen went outside and around to the back of the building, apparently looking for a way to enter apartment 302. Darryl Ayres, an occupant of apartment 302, and Diana Kirkland heard several men on the fire escape saying that they could not get inside the building because of the bars on the windows. Diana Kirkland ran to apartment 303 to call the police. One of the robbers then returned to the front of the building and tried, unsuccessfully, to open the gate which Nutt had locked while the robbers were on the fire escape. A few moments later the gunmen left and the police arrived.

Nutt, Sarinana, Leslie, and Diana Kirkland told the police what had happened, and the police said they would look into it. After the police had left, Nutt, Sarinana, and Leslie went to Nutt's apartment, 402. Diana Kirkland was afraid to go to her apartment, so she went to apartment 302.

At approximately 11:20 p.m. on the same night, Nellie Floyd, Darryl Ayres, June Rose Watson, Rosslyn Kirkland, Diana Kirkland and her child, and a man named "Keith" were in apartment 302 discussing the events that had just taken place. Ayres decided to block the door of the apartment with a bed, table, and chair. About five minutes later someone began to kick at the door. The door opened a little and someone said "open the door," sticking a gun through the crack in the door. Ayres opened the door and approximately four men entered the apartment swinging guns in the air. The intruders began to ask about drugs, money, and "Miami." Wray pointed a gun in Floyd's face, and asked her where the drugs and money were. Ayres and some of the other occupants attempted to explain to the gunmen that there were no drugs or money in

the apartment, but Wray told him to shut up. Appellant Simmons hit Ayres in the face.

Nutt, who was upstairs in apartment 402, heard the commotion and went down to 302 to investigate. Leslie and Sarinana, who were also in 402, called the police. When Nutt knocked on the door of 302 Wray grabbed him, threw him on the floor, and stuck a gun in his mouth. The intruders searched apartment 302, and found a plastic bag containing a white powder substance in a container in the kitchen. After finding the bag, they began kicking and stomping Nutt in the head. Watson told the intruders that the bag contained powdered milk, but they continued to search the apartment.

One of the intruders then told the occupants of apartment 302 that if no one told him where the drugs and money were he would start killing people. Nutt took approximately $180.00 out of his pocket, and Wray took it from him. The intruders then ran out of the apartment and up the stairs as the police arrived.

Officer John Coursey testified that when he arrived on the scene at approximately 11:30 p.m., he heard a loud noise in the back of the building and went to investigate. Coursey observed a person standing on the fire escape and instructed him to come down. The individual went through a window into one of the apartments. Coursey then entered the building to search for him.

Detective Thomas Gallogly testified that on June 4, 1991, he responded to a call for assistance at a robbery in progress at 228 N Street, N.W. When Gallogly arrived, police officers were surrounding the building; he was advised that between one and six armed men were inside. The police secured the building and requested assistance from the Special Operations Division Emergency Response Team.

The Emergency Response Team arrived and began to conduct a methodical search of the building in order to evacuate any remaining occupants and to locate the intruders. Approximately three hours after the search began, appellant Hanna and former co-appellant Wray were discovered in the closet of a vacant fourth floor apartment. Nutt, Sarina-

na, and Ayres identified appellant Hanna at separate show-up identifications soon after Hanna was discovered inside the building. Specifically, Nutt identified Hanna as the individual who "took my stuff off me." Sarinana identified appellant Hanna as "the one who took the stuff off of Nutt. He was going through Nutt's pockets." Ayres also identified Hanna as one of the gunmen. Detective Larry Payne removed from Hanna's neck a gold chain which Nutt identified as the chain that Hanna had taken off his neck during the first incident.

Sergeant Henry Rorie and Officer Kevin Pope of the Metropolitan Police Department described their discovery of Hanna and Wray in a closet in a fourth floor apartment. Pope identified Hanna and Wray in court as the two suspects that he had discovered in the closet. An Intratech–22 gun was discovered on top of the kitchen cabinet in the same apartment. Sergeant Dennis McKinney discovered a .45 caliber semi-automatic handgun approximately 15 feet from the back of the building. A small semi-automatic handgun was discovered in the yard of a nearby building.

Detective Payne testified that he was familiar with appellants Hanna and Simmons and former co-appellant Wray because he had worked in their neighborhood for many years. Payne further testified that during that period he had seen the three men together approximately twice a week. The detective also described a photo array session at which Diana Kirkland and Ayres had identified appellant Simmons as one of the gunmen.

On the basis of these identifications, Payne obtained an arrest warrant for Simmons, who was arrested on July 9, 1991. Three weeks later, on July 30, 1991, Diana Kirkland picked Simmons out of a lineup. On August 8, 1991, Sarinana was shown a videotape of that same lineup and identified Simmons as one of the gunmen. At trial, Nutt also identified Simmons in court as one of the intruders.

Payne witnessed the test firing of two Intratech–22's and a Colt .45 semi-automatic pistol found at the scene of the crime. All of the weapons were operational. Neither appellant was licensed to carry a pistol in the District of Columbia.

## II.

Appellants Hanna and Simmons were each convicted on all the following charges:

*First (10:30 p.m.) Incident*

Three counts of Kidnapping While Armed (Counts D, E, I), D.C.Code §§ 22–2101, –3202 (1989 Repl.), for the kidnapping of Sarinana, Leslie, and Nutt.

Two counts of First Degree Burglary While Armed (Counts F, G), D.C.Code §§ 22–1801(a), –3202, for the Burglary with Intent to Steal, and the Burglary with Intent to Assault, in apartment 201.

Two counts of Assault with a Dangerous Weapon (Counts H, J), D.C.Code § 22–502, for the assaults of Burko and Watson.

One count of Armed Robbery (Count K), D.C.Code §§ 22–2901, –3202, for taking a gold chain from Nutt.

One count of Possession of a Firearm During a Crime of Violence (Count L), D.C.Code § 22–3204(b).

*Second (11:20 p.m.) Incident*

Two Counts of First Degree Burglary While Armed (Counts M, N), D.C.Code §§ 22–1801(a), –3202, for the Burglary with Intent to Steal, and the Burglary with Intent to Assault, in apartment 302.

Five counts of Assault with a Dangerous Weapon (Counts O, P, Q, R, S), D.C.Code § 22–502, for the assaults of Diana Kirkland, Rosslyn Kirkland, Floyd, Ayres, and Watson.

One count of Armed Robbery (Count T), D.C.Code §§ 22–2901, –3202, for taking money from Nutt.

One count of Possession of a Firearm during a Crime of Violence (Count U), D.C.Code § 22–3204(b).

One count of Carrying a Pistol Without a License (Count V), D.C.Code § 22–3204(a).

One count of Possession of a Prohibited Weapon (Count W), D.C.Code § 22–3214(a).[3]

Appellants contend that there was one continuous incident on the night of June 4, 1991, rather than two distinct sets of events as the trial court found. Several of their merger arguments flow from this contention. Hanna contends that (1) all four of the burglary counts (F, G, M, N) that arise out of the two incidents merge; (2) all the kidnapping counts (D, E, I) merge; and (3) the two possession of a firearm during a crime of violence counts (L, U) merge.[4] Simmons adopts former co-appellant Wray's arguments that all the convictions for "crimes of violence" (Counts D, E, H, I, J, K, O, P, Q, R, S, T) merge. Simmons also contends that all convictions should be vacated except for one count of first degree burglary and one count of possession of a firearm during a crime of violence.

In light of Simmons' contention that proper application of the merger doctrine reduces these twenty convictions to one count of first degree burglary and one count of possession of a firearm during a crime of violence, we will treat this appeal as presenting the question whether *any* of these twenty convictions merges with another.[5]

### III.

**▮▮▮** "[T]he [Double Jeopardy Clause of the] Fifth Amendment does not prohibit separate and cumulative punishment for separate criminal acts." *Owens v. United States,* 497 A.2d 1086, 1094–95 (D.C.1985), *cert. denied,* 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986). Thus, "[i]t is settled law that the doctrine of merger does not apply where the offenses arise out of separate acts or transactions." *Allen v. United States,* 580 A.2d 653, 657 (D.C.1990) (citation and inter-

---

3. After a hearing on January 28, 1992, appellants were sentenced to prison on February 3, 1992 for the first incident as follows: (1) three counts of armed kidnapping (D, E, I), eight to twenty-four years for each count; (2) two counts of first degree burglary while armed (F, G), four to twelve years for each count; (3) two counts of assault with a dangerous weapon (H, J), three to nine years for each count; (4) one count of armed robbery (K), three to nine years; and (5) one count of possession of a firearm during a crime of violence (L), a mandatory minimum sentence of five to fifteen years. Sentences on the two burglary counts (F, G) were concurrent with each other but consecutive to all the other counts. Sentences for the seven crimes of violence counts D, E, H, I, J, K, L were concurrent with each other. The overall sentence for the first incident was 12 to 36 years.

Appellants received prison sentences for the second incident as follows: (1) two counts of first degree burglary while armed (M, N), four to twelve years for each count; (2) five counts of assault with a dangerous weapon (O, P, Q, R, S), three to nine years for each count; (3) one count of armed robbery (T), three to nine years; (4) one count of possession of a firearm during a crime of violence (U), a mandatory minimum sentence of five to fifteen years; (5) one count of carrying a pistol without a license (V), one year; and (6) one count of possession of a prohibited weapon (W), one year. Sentences on the two burglary counts (M, N) were concurrent with each other but consecutive to all other counts; sentences for the seven crimes of violence counts O, P, Q, R, S, T, U were concurrent with each other; and the sentences for carrying a pistol without a license and for possession of a prohibited weapon were concurrent with all other counts. The overall

sentence for the second incident was nine to 27 years.

Appellants' sentences for the two incidents, therefore, totaled 21 to 63 years of imprisonment. In sentencing appellants on all counts, the trial court acted consistently with this court's suggestion that sentence should initially be imposed on all counts to allow this court to review merger issues and to remand to the trial court for resentencing as necessary. *See Warrick v. United States,* 528 A.2d 438, 439 (D.C.1987).

4. With respect to each of Hanna's merger claims, we conclude below in Part IV. that (1) the two burglary counts from the first incident (F, G) merge, and the two burglary counts from the second incident (M, N) merge, but the "combined" burglary count from the first incident (F/G) does not merge with the "combined" burglary count of the second incident (M/N); (2) the three kidnapping counts (D, E, I) do not merge with each other because each count has a different victim; (3) the possession of a firearm count from the first incident (L) does not merge with the possession of a firearm count from the second incident (U).

5. Neither appellant advances a rationale as to why their convictions for carrying a pistol without a license (CPWL) (Count V) and possession of a prohibited weapon (PPW) (Count W) should merge with any of the other counts. We will address the question whether these counts merge, however, because Simmons' contention that all counts should be vacated save one count of first degree burglary and one count of possession of a firearm during a crime of violence obviously implies that the CPWL and PPW counts merge somewhere along the line as well.

nal quotation omitted). Criminal acts are considered separable for purposes of merger analysis when there is "an appreciable period of time," *id.* at 658, between the acts that constitute the two offenses, or when a subsequent criminal act "was not the result of the original impulse, but of a fresh one." *Blockburger*, 284 U.S. at 303, 52 S.Ct. at 181. In evaluating separability of offenses, this court has adopted the so-called "fork-in-the-road" test for determining whether a defendant's conduct is subject to multiple punishments:

> If at the scene of the crime the defendant can be said to have realized that he [or she] has come to a fork in the road, and nevertheless decides to invade a different interest, then his [or her] successive intentions make him [or her] subject to cumulative punishment, and he [or she] must be treated as accepting that risk, whether in fact he [or she] knows of it or not.

*Owens*, 497 A.2d at 1095 (*quoting Irby v. United States*, 129 U.S.App.D.C. 17, 22–23, 390 F.2d 432, 437–38 (1967) (en banc) (Leventhal, J., concurring)). Thus, where it is clear, under any of these tests, that a defendant has committed more than one criminal act, there is no constitutional bar to the imposition of separate punishments for each act. *See, e.g., Allen*, 580 A.2d at 658 (convictions for distribution and possession with intent to distribute do not merge because of passage of time between acts on which each conviction was based); *Owens*, 497 A.2d at 1097 (where appellant shot victim after attempted robbery failed, shooting invaded a different interest from attempted robbery and, therefore, double jeopardy clause did not bar separate convictions for each offense).

A more difficult problem arises when a defendant is convicted of violating more than one statutory provision on the basis of the same act or course of conduct. In this situation we have noted that "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Byrd v. United States*, 598 A.2d 386, 388–89 (D.C.1991)) (*quoting Albernaz v. United States*, 450 U.S. 333, 334, 344, 101 S.Ct. 1137, 1140, 1145, 67 L.Ed.2d 275 (1981) (internal citations and quotation marks omitted)). "The problem normally presented[, however,] is an absence of any evidence of actual legislative intent with respect to multiple punishments when two legislative provisions apply to and provide punishment for the same criminal act in a given case." *Id.* at 389. The Supreme Court announced the longstanding test for determining whether the two offenses merge in such situations in *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

Although the *Blockburger* opinion uses the word "fact," the Supreme Court has made clear that the proper question is whether each offense contains distinct statutory elements, not whether the same evidentiary fact was used to prove an element of more than one offense:

> The *Blockburger* test has nothing to do with the *evidence* presented at trial. It is concerned solely with the statutory elements of the offenses charged.

*Grady v. Corbin*, 495 U.S. 508, 521 n. 12, 110 S.Ct. 2084, 2093 n. 12, 109 L.Ed.2d 548 (1990) (emphasis in original), *overruled on other grounds, United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).[6] In this jurisdiction the *Blockburger* rule has been codified at D.C.Code § 23–112 (1989 Repl.).[7] *See Whalen v. United States*, 445 U.S. 684, 693, 100 S.Ct. 1432, 1438, 63

---

**6.** A long line of Supreme Court rulings before *Grady* "had indicated that the elements test was the proper one." *Byrd*, 598 A.2d at 389 n. 5 (citing cases).

**7.** D.C.Code § 23–112 provides:
A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises out of the same transaction and requires proof of a fact which the other does not.

L.Ed.2d 715 (1980) ("the only correct way to read § 23–112 . . . is to read it as embodying the *Blockburger* rule for construing the penal provisions of the District of Columbia Code").

 In *Byrd,* this court, sitting en banc, resolved a conflict between a line of cases in this jurisdiction which had continued to analyze merger issues in light of the facts adduced at trial and another line which used a test that focussed exclusively on the statutory elements of each offense. *Byrd,* 598 A.2d at 389–90, compared cases utilizing a fact-based merger analysis,[8] with cases employing a merger analysis based on statutory elements.[9] *Byrd* conclusively rejected a merger analysis based on the facts adduced at trial in favor of the *Blockburger* elements test:

> We do not think that the pure fact-based analysis of these holdings [*Arnold* and *Worthy* ] can survive the recent reaffirmation by the Supreme Court of the proper application of the *Blockburger* test in *Grady v. Corbin, supra.* Otherwise put, these cases erred in concluding that since the facts as actually presented to prove one charge were necessarily used by the government to prove the second charge, the two charges constituted the "same offense." Rather the focus should have been on the statutory elements of the two distinct charges; viz., *whether each statutory provision required proof of an element that the other did not.*

*Id.* at 390 (footnotes omitted and emphasis added).[10] With these principles in mind we

turn to the merger issues presented by this appeal.

## IV.

 In theory, this case requires analysis of whether any one of the convictions merges with any of the other 19 convictions. As already indicated, however, convictions that arise out of separate incidents do not merge. As elaborated below, moreover, convictions for crimes involving distinct, identifiable victims do not merge. As a result, separating the first incident counts from the second incident counts, and separating out counts involving different individual victims substantially reduces the number of merger claims for which we must conduct a *Blockburger* elements analysis.

 Appellants contend, first, that all 20 of the counts with which they each were charged arose out of one continuous incident. The record, however, amply supports the trial court's conclusion that the events of June 4, 1991, may be divided into two separate incidents.[11] The complainants consistently testified that appellants, after entering 228 N Street, N.W., at approximately 10:30 p.m. and assaulting and robbing a number of residents in apartment 201, left the building. Appellants then returned at approximately 11:20 p.m. and assaulted and robbed an almost entirely different group of residents in apartment 302. The actions taken during the second intrusion into the building resulted from an impulse separate from the actions that comprised the first intrusion.[12] There-

---

8. *Arnold v. United States,* 467 A.2d 136 (D.C. 1983); *Worthy v. United States,* 509 A.2d 1157 (D.C.1986).

9. *(Bobie) Wilson v. United States,* 528 A.2d 876, 880 (D.C.1987); *Robinson v. United States,* 501 A.2d 1273, 1275–76 (D.C.1986).

10. Of course, the facts adduced at trial are still relevant when there is an argument that two offenses do not merge because they are based on distinct "acts or transactions." *Allen,* 580 A.2d at 657. *Blockburger, Grady,* and *Byrd* stand only for the proposition that when more than one offense is founded on the same conduct the merger analysis must focus exclusively on the elements of the various offenses and not on the facts introduced to prove those elements.

11. Throughout the trial, counsel for both sides referred to the transactions as the first incident and the second incident. To argue on appeal that there was but one continuous incident is contrary to trial counsels' own perceptions.

12. Although not specifically argued by appellants, the separate nature of the Possession of a Firearm during a Crime of Violence (PFCV) counts (L, U) in the first and second incidents merits special note. One could arguably view the actions underlying the PFCV counts to be one continuous possession. This court has held, for example, that Carrying a Pistol Without a Licence (CPWL) and Possession of a Prohibited Weapon (PPW) are continuous offenses. Separate counts of CPWL or PPW would merge if charged in both the first and second incident, unless there were evidence that the possession

fore, there is no merger of counts arising out of the first incident with those arising out of the second incident. *See Spain v. United States*, 665 A.2d 658 (D.C.1995) (counts did not merge when an "appreciable interval" of time between two criminal episodes indicated that defendant had "reached a 'fork in the road' or had acted in response to a 'fresh impulse' "); *Allen*, 580 A.2d at 657 (merger "does not apply where the offenses arise out of separate acts or transactions"). Accordingly, none of the counts arising out of the first incident (D, E, F, G, H, I, J, K, L) merges with any of the counts arising out of the second incident (M, N, O, P, Q, R, S, T, U, V, W).

### A. The First Incident

■■■■■ Crimes do not merge if they are perpetrated against different victims. *See, e.g., Adams v. United States*, 466 A.2d 439, 443 n. 3 (D.C.1983) (two offenses do not merge where each offense was directed against a different victim).[13] We therefore eliminate the merger claims for counts concerning crimes directed against different victims. As to the first incident, the kidnapping of Sarinana (D), kidnapping of Leslie (E), assault of Burko with a dangerous weapon (H), and assault of Watson with a dangerous weapon (J) all concern different victims.[14] Accordingly, no merger occurs between any of these counts and any other first incident count involving crimes directed at still other identifiable victims.

The remaining first incident counts are the kidnapping of Nutt (I), the armed robbery of Nutt (K), the burglary with intent to steal in apartment 201 (F), the burglary with intent to assault in apartment 201 (G), and the possession of a firearm during a crime of violence (L). We initially consider whether the kidnapping of Nutt (I) merges with the armed robbery of Nutt (K). Next, we consider whether the two burglary counts (F, G) merge with each other or with any other first incident counts. Finally, we consider whether the possession of a firearm during a crime of violence (PFCV) count merges with any of the first incident kidnapping, burglary, assault with a dangerous weapon (ADW), or armed robbery counts.

### 1. Kidnapping While Armed—Armed Robbery

■■■■■ The kidnapping count (I) (§§ 22–2101, –3202) does not merge with the armed robbery count (K) (§§ 22–2901, –3202), despite the fact that Nutt was the victim of both counts, because the two crimes have different elements under the *Blockburger* test. *See Monroe v. United States*, 600 A.2d 98, 99 (D.C.1991) (kidnapping and armed robbery of same victim do not merge under *Blockburger*).[15] Kidnapping requires proof

had been interrupted. *See (James) Wilson v. United States*, 590 A.2d 1002, 1004–05 (D.C. 1991) (two PPW counts will merge if possession is continuous); *Bruce v. United States*, 471 A.2d 1005, 1007 (D.C.1984) (two CPWL convictions merge when defendant carried pistol for eight hours without interruption). PFCV, however, requires more than mere possession: the defendant must possess the firearm while committing a crime of violence. Each time the defendant commits an independent violent crime, a separate decision is made whether or not to possess the firearm during that crime. In this case, appellants' decision to possess the firearms upon returning to 228 N Street, N.W., constituted a fresh impulse. Therefore, the two PFCV counts from the two incidents (L, U) do not merge.

13. *Compare Joiner v. United States*, 585 A.2d 176, 178 (D.C.1991) (only one offense where assaultive act is directed, collectively, at more than one victim).

14. The two ADW counts, (H, J) (§ 22–502), were two separate assaults, not a collective assault on the two victims. *See Joiner.* Count H involved an assault on Burko in apartment 201. Count J involved an assault on Watson in the hallway outside apartment 302. Therefore, the two ADW counts do not merge.

15. *But cf. Catlett v. United States*, 545 A.2d 1202, 1215 (D.C.1988) (stating that kidnapping and robbery charges merge when "the detention or confinement is an integral part of the robbery"); *Robinson v. United States*, 388 A.2d 1210, 1211–13 (D.C.1978) (employing a fact-based analysis to conclude that kidnapping and assault with intent to rape charges merge when the kidnapping is incidental to the assault). We have not expressly resolved whether the fact-based analysis employed in the *Robinson* line of cases is still good law today. *See Hagins v. United States*, 639 A.2d 612, 617 n. 10 (D.C.1994) (declining to address the issue of whether the *Byrd* line of cases effectively overruled *Robinson* ).

Even if *Robinson* were to survive in the post-*Byrd* era, an issue we do not here decide, the

that the victim was seized or detained, which armed robbery does not. Armed robbery requires proof that property of value was taken, which kidnapping does not. *See Head v. United States,* 451 A.2d 615, 624 (D.C. 1982) (noting elements of armed robbery and kidnapping).

### 2. First Degree Burglary While Armed

■ The two first degree burglary while armed counts, (F, G) (§§ 22–1801, –3202), merge because they are both based on appellants' entry into apartment 201. *See Warrick,* 528 A.2d at 439 (one illegal entry into home may not serve as basis for two first degree burglary while armed convictions because societal interest protected by burglary statute was offended only once).[16] We shall refer to the "merged" first degree burglary while armed count in the first incident as count F/G.

■ The first degree burglary while armed count (F/G) does not merge with the kidnapping (D, E, I), armed robbery (K), or ADW counts (H, J)[17] because burglary requires proof of an element (entry into a dwelling with criminal intent) that the other first incident crimes do not. Kidnapping (victim was seized or detained), armed robbery (property of value was taken), and assault with a dangerous weapon (forceful or violent attempt to inflict bodily harm), all require proof of elements that burglary does not.

### 3. Possession of a Firearm During a Crime of Violence (PFCV)

■ The possession of a firearm during a crime of violence (PFCV) count does not merge with any of the kidnapping while

present facts indicate that the kidnapping and robbery counts do not merge. Appellants robbed Nutt in the hallway upon Nutt's return from Chinatown. Later, appellants forced Nutt downstairs to the area in front of apartment 201. The kidnapping, therefore, was not incidental to the robbery.

16. The government concedes that appellants should be convicted of only one first degree burglary charge in connection with each incident.

17. The first degree burglary count (F/G) also does not merge with the possession of a firearm

armed counts (D, E, I), the burglary while armed count (F/G), the armed robbery count (K), or the ADW counts (H, J).

In *Thomas v. United States,* 602 A.2d 647, 650 (D.C.1992), we held that the Council of the District of Columbia "did not intend for the offense defined by 3204(b) [PFCV] to merge with an offense subject to the enhanced penalty provision of 3202" for committing an underlying offense while armed. Thus, appellants' PFCV convictions do not merge with any of their "while armed" convictions. *See Thomas,* 602 A.2d at 655 (holding that PFCV count under 3204(b) does not merge with distribution of a controlled substance while armed, possession with the intent to distribute a controlled substance while armed, or unlawful possession of ammunition). Specifically, this court has held that a PFCV count does not merge with counts of armed robbery, burglary while armed, or assault with intent to commit robbery while armed,[18] and that a PFCV count does not merge with an ADW count.[19]

Nor does the PFCV count merge with the kidnapping while armed counts. First, the PFCV count does not merge with the "while armed" provision for the reasons explained in *Thomas. Id.* Second, the PFCV count does not merge with the kidnapping provision because each requires proof of an element that the other does not. PFCV requires proof of possession of a firearm, while kidnapping requires proof that the victim was seized or detained.

In sum, we conclude that the PFCV count does not merge with any of the other first incident counts.

during a crime of violence count (L). See *infra* Part IV.A.3.

18. *Poole v. United States,* 630 A.2d 1109, 1129 (D.C.1993), *cert. denied,* — U.S. —, 115 S.Ct. 160, 130 L.Ed.2d 98 (1994).

19. *Freeman v. United States,* 600 A.2d 1070, 1073 (D.C.1991) (holding that ADW count does not merge with a PFCV count because, "[n]ot only does each offense [ADW and PFCV] require proof of an element that the other does not, each offense addresses a distinct societal interest").

## B. The Second Incident

We turn now to the question whether any of the second incident counts merge. We first consider whether any of the second incident counts involving identifiable victims (armed robbery, ADW) merge, and then evaluate whether any of the remaining counts (PFCV, carrying a pistol without a license, possession of a prohibited weapon, first degree burglary while armed) merge with any of the other second incident counts.

### 1. Armed Robbery

■ The armed robbery count (T) (§§ 22–2901, –3202) concerns a victim different from the identifiable victims of the ADW counts (O, P, Q, R, S) (§ 22–502). Nutt was the victim of the robbery, while Diana Kirkland, Rosslyn Kirkland, Floyd, Ayres, and Watson were the victims of the ADW counts. Therefore, the armed robbery count does not merge with ADW counts.

### 2. Assault with a Dangerous Weapon (ADW)

■ The government concedes that the four separate ADW counts (O, P, R, S) (§ 22–502) that are based on the collective assault on Diana Kirkland, Rosslyn Kirkland, Ayres, and Watson merge into a single count. See Joiner, 585 A.2d at 178 ("a defendant is guilty of only one offense if he [or she] puts in fear different members of a group towards which collectively he [or she] directs his [or her] action"). We shall refer to this merged count as Count O/P/R/S. The government argues, however, that the assault on Floyd (Count Q) was distinct from the group assault and therefore does not merge. This argument is supported by the record. There is testimony clearly suggesting that after the group of intruders had entered apartment 302 and generally menaced the occupants, Wray stuck his gun in Floyd's face and asked her where the drugs and money were.[20] We conclude, therefore, that Count Q does not merge into the other counts. In sum, two ADW counts arising out of the second inci-

dent (Counts O/P/R/S and Q) remain unmerged.

We now consider whether any of the crimes lacking an identifiable victim merges with any of the other second incident counts.

### 3. Possession of a Firearm During a Crime of Violence (PFCV)

The PFCV count, (U) (§ 22–3204(b)), does not merge with the first degree burglary while armed count (M), the armed robbery count (T), or the ADW counts (O/P/R/S and Q) for the same reasons that the first incident counts of those same charges do not merge. See supra Part IV.A.3.

■ The PFCV count does not merge with the CPWL count (V) (§ 22–3204(a)). See Ray v. United States, 620 A.2d 860, 863–65 (D.C.1993) (PFCV count does not merge with CPWL count).

■ The PFCV count does not merge with the possession of a prohibited weapon count (W) (§ 22–3214(a)). PFCV requires proof that the defendant possessed a firearm while committing a crime of violence, which PPW does not. PPW requires proof of possession of a specifically prohibited weapon, which PFCV does not.

### 4. Carrying a Pistol without a Licence (CPWL)

■ The first degree burglary while armed count (M) (§§ 22–1801, –3202) does not merge with the single CPWL count (V) (§ 22–3204(a)). First degree burglary while armed requires proof that the defendant entered a dwelling of another person—when a person was present in the dwelling—"while armed with or having readily available a firearm or any other dangerous weapon," but the weapon need not be an operable and unlicensed pistol. See Rouse v. United States, 402 A.2d 1218, 1221 (D.C.1979). CPWL, in contrast, specifically requires carrying—as opposed to "having readily available"—an operable, unlicensed pistol. Thus,

---

**20.** Appellants Hanna and Simmons were also convicted, presumably as aiders and abettors, of the assault on Nellie Floyd. Although appellants generally argue that the evidence was insufficient to support all their convictions, see infra Part VI., neither appellant has specifically argued on appeal that he should not have been convicted of the assault on Nellie Floyd.

each statutory provision requires proof of an element that the other does not.

■ The armed robbery count (T) (§§ 22–2901, –3202) does not merge with the CPWL count (V). *See Rouse*, 402 A.2d at 1221 (armed robbery and CPWL counts do not merge because each statute requires proof of an element that the other does not, and also because each provision serves a distinct societal interest).

■ The ADW counts (O, Q) (§ 22–502) do not merge with the CPWL count (V). ADW requires proof of an attempt to injure, which CPWL does not. CPWL requires proof of carrying a pistol, which ADW does not.

■ The CPWL count (V) does not merge with the possession of a prohibited weapon count, (W) (§ 22–3214(a)). CPWL requires proof that the defendant did not have a license, which possession of a prohibited weapon does not. Possession of a prohibited weapon requires proof of possession of a specifically prohibited weapon, which CPWL does not.

### 5. Possession of a Prohibited Weapon (PPW)

■ The first degree burglary while armed count (M) (§§ 22–1801, –3202) does not merge with the single possession of a prohibited weapon count (W) (§ 22–3214(a)). *See (Taff) Jones v. United States*, 516 A.2d 929, 934 (D.C.1987), *cert. denied*, 481 U.S. 1054, 107 S.Ct. 2193, 95 L.Ed.2d 848 (1987) (holding that convictions of "while armed" enhancement under § 3202(a) do not merge with PPW convictions under § 3214). Furthermore, first degree burglary requires an entry which PPW does not; PPW requires possession of a specifically prohibited weapon,[21] which first degree burglary does not.

■ The armed robbery count (T) (§§ 22–2901, –3202) does not merge with the PPW count (W). *See (Taff) Jones*, 516 A.2d at 934 (§ 3214(a) does not merge with the

"while armed" enhancement provision of § 3202). Furthermore, robbery requires proof of a taking, which PPW does not; PPW requires possession of a specifically prohibited weapon, which armed robbery does not.

■ The assault with a dangerous weapon counts (O, Q) (§ 22–502) do not merge with the PPW count (W). *(Carl) Jones v. United States*, 401 A.2d 473, 476 (D.C.1979) (assault count does not merge with PPW count).

### 6. First Degree Burglary while Armed

■ The two first degree burglary while armed charges (M, N) merge because they are both based on appellants' entry into apartment 302. *See Warrick*, 528 A.2d at 439; *supra* Part IV.A.1. We shall refer hereafter to the merged second incident burglary count as count M/N.

■ The first degree burglary while armed count (M/N) (§§ 22–1801, –3202) does not merge with the armed robbery count (T) (§§ 22–2901, –3202) or with the ADW counts (O/P/R/S, Q) (§ 22–502) because each requires proof of an element the other does not. See *supra* Part IV.A.2.

### C. Summary of Merger Conclusions

(1) There is no merger of counts arising out of the first incident with those arising out of the second incident. (2) There is no merger of counts concerning distinct, identifiable victims. (3) Among the charges arising out of the first incident, only the two first degree burglary while armed counts (F, G) merge. (4) Among the charges arising out of the second incident, the two first degree burglary while armed counts (M, N) merge, and four of the ADW counts (O, P, R, S) merge.

### V.

■ The government contends that the trial court erred when, over objection, it refused to apply the sentence enhancement provisions of D.C.Code § 22–3202 to appellants' convictions for "crimes of violence," as defined in D.C.Code § 22–3201. We agree.

---

21. D.C.Code § 22–3214(a) provides:
No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slungshot

(sic), sand club, sandbag, switchblade knife, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms[.]

D.C.Code § 22–3202(a) provides that "[a]ny person who commits a crime of violence, or a dangerous crime in the District of Columbia when armed with or having readily available any pistol or other firearm (or imitation thereof) or other dangerous or deadly weapon ..." will be subject to sentence enhancement as provided for in subsections (1) and (2) of that provision. "Crime[s] of violence," as defined in § 22–3201, include kidnapping, burglary, robbery, and assault with a dangerous weapon. The trial court reasoned, however, that appellants were not subject to the mandatory minimum sentences required by § 22–3202 because the legislature did not intend § 22–3202 to apply to a defendant who was also subject to a mandatory minimum sentence under § 22–3204(b) for possession of a firearm during a crime of violence. This court has expressly ruled, however, that §§ 22–3204(b) and 22–3202 do not merge and, therefore, that a defendant subject to a mandatory minimum sentence as a result of a conviction under § 22–3204(b) may also be subject to the enhancement provisions of § 22–3202. *See Thomas,* 602 A.2d at 654.[22] At resentencing, therefore, appellants are subject to the mandatory minimum sentences required by § 22–3202 for all their convictions for "crimes of violence."[23]

## VI.

 Both appellants contend there was insufficient evidence adduced at trial to support any of their convictions. These contentions are wholly without merit. "In re-

viewing a case for sufficiency of the evidence, we are obliged to view the evidence in the light most favorable to the government, and must consider the jury's right to weigh the evidence, draw all reasonable inferences from the facts, and determine the credibility of the witnesses." *(Nathaniel) Jones v. United States,* 548 A.2d 35, 48 (D.C.1988). In this case the government introduced ample evidence, see *supra* Part I., from which a reasonable juror could have found appellants guilty beyond a reasonable doubt on each of the charged counts.

## VII.

We affirm all of appellants' convictions. As to the merger arguments we conclude that Counts F and G merge into one count of first degree burglary while armed; Counts M and N merge into another single count of first degree burglary while armed; and Counts O, P, R, and S merge into a single count of assault with a dangerous weapon. We reject all of appellants other merger arguments. Finally, we conclude that the trial court erred in declining to apply the enhancement provisions of D.C.Code § 22–3202 to appellants' convictions for crimes of violence. The case is remanded to the trial court for resentencing in accordance with this opinion.

*So Ordered.*

22. The trial court did not have the benefit of the *Thomas* decision because *Thomas* was decided on January 28, 1992, the same day the sentencing hearing was held.

23. The government specifically argues that appellants must receive mandatory minimum sentences as required by § 22–3202 for their convictions for kidnapping while armed, armed robbery, and first degree burglary while armed. It is unclear why the government has not also requested mandatory minimum sentences for appellants' ADW convictions as well. If the government makes such a request on remand, we leave it to the trial court to evaluate the appropriateness of that request.

The government also contends that appellant Hanna is subject to the recidivist enhancement provision of § 22–3202(a)(2) because of his previous conviction of a crime of violence, but re-

quests that he be given a five year mandatory minimum sentence. If appellant Hanna's prior conviction was for possession with intent to distribute while armed in contrast with a simple PWID (the record is ambiguous on this point), he would appear to be subject to a ten year mandatory minimum sentence on each of the present "crime of violence" charges. Section 22–3202(a)(2) requires that "if convicted of such second offense while armed with any pistol or firearm [the defendant must] be imprisoned for a mandatory minimum term of not less than ten years." In light of the fact that Hanna is alleged to have committed the present crimes with a "pistol or firearm," as opposed to some other type of dangerous weapon, it appears that the statute would require a ten year mandatory minimum sentence. If the government requests such a sentence on remand, we leave the appropriateness of that request to the trial court.