**Robert Louis STEVENSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 97–CF–83.

District of Columbia Court of Appeals.

Submitted Sept. 12, 2000.
Decided Oct. 19, 2000.

Frazer Walton, Jr., Washington, DC, appointed by the court, was on the brief for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher, Elizabeth Trosman, Anthony Asuncion and Marianela

Peralta, Assistant United States Attorneys, were on the brief for appellee.

Before STEADMAN, FARRELL and GLICKMAN, Associate Judges.

STEADMAN, Associate Judge:

 Appellant was convicted of one count of armed robbery, one count of second degree armed burglary, and two counts of possession of a firearm during a crime of violence or dangerous offense (PFCV) based on charges arising from an armed robbery at a retail clothing store. He was sentenced to five to fifteen years on each of the four counts. The sentence for the armed robbery and each of the two PFCVs were to run consecutive to each other; the sentence for the armed burglary was to run concurrently with the other sentences. We issue this published opinion to explain why we reject appellant's argument that his two PFCV convictions under D.C.Code § 22–3204(b) should merge under the doctrine of our recent case of *Nixon v. United States*, 730 A.2d 145 (D.C.1999).[1]

## I.

At about 7:45 p.m., two men entered an Eddie Bauer clothing store in the Georgetown area of the District of Columbia. The shorter man tried on a coat, assisted by an employee, and the two men left after fifteen or twenty minutes. Neither man wore a mask. About an hour later, the two men reentered and the shorter man spoke to the same store employee who had earlier assisted him with the coat. The taller man, who was the appellant, asked another employee if she would be receiving any more coats like the one his friend had tried on, and she said no. When he asked for the manager, the employee responded that she was the manager, whereupon she walked away to assist a third employee with a jammed cash register. Appellant then approached a fourth employee, who was also standing at a register, and directed her to stand hip-to-hip with him, brandishing a firearm. Appellant then proceeded to rob the store at gun point, directing the manager to open the register and give him the money inside, which she did. When the shorter man presented himself at the counter, appellant directed the shorter man to grab approximately ten watches that were on top of the counter, and ordered the employees to the back of the store. The two men then left the store.

## II.

 D.C.Code § 22–3204(b) makes it a separate criminal offense to possess a firearm while committing a "crime of violence or a dangerous crime." It may be said that as a general rule, where two predicate armed offenses do not merge, a defendant may be convicted of separate counts of PFCV relating to each offense; that is, as to each "crime of violence on dangerous crime."[2] *See Hanna v. United States*, 666 A.2d 845, 855 n. 12 (D.C.1995).

1. Appellant also challenges the sufficiency of the evidence used to convict him, citing an allegedly tainted photo array identification. Appellant terms the array suggestive because appellant "was the older person shown ... ". Even if true, several witnesses had ample opportunity to observe the perpetrators during the commission of the crime, selected appellant's photo from the array, and identified him in court. Although appellant contends that the lack of corroborating evidence is a *per se* failure to establish guilt beyond a reasonable doubt, there is no general rule requiring corroboration of eyewitness testimony. *Arnold v. United States*, 358 A.2d 335 (D.C.1976). The evidence was clearly sufficient.

Appellant also raises a challenge to the government's alleged failure to disclose to appellant the name of a fourth store employee who was present at the time of the robbery. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, that employee in fact gave a taped description of the robbers which was played for the jury at trial, testified, and was subject to cross examination at trial. *See Johnson v. United States*, 544 A.2d 270, 275 (D.C.1988) (no violation where defense counsel received the information in question in time for trial).

2. It is clear, contrary to appellant's assertion, that the convictions for PFCV do not merge into the predicate armed offenses. *Hanna v.*

This is the standard practice of the federal circuits in interpreting 18 U.S.C. § 924(c)(1), the federal counterpart to § 22–3204(b). *See, e.g., United States v. Andrews,* 75 F.3d 552, 558 (9th Cir.) *cert. denied* 517 U.S. 1239, 116 S.Ct. 1890, 135 L.Ed.2d 183 (1996) (four § 924(c) convictions from separate predicate offense); *United States v. Cappas,* 29 F.3d 1187, 1189–91 (7th Cir.1994) (permitting multiple § 924(c) convictions for separate predicate offenses); *United States v. Hamilton,* 953 F.2d 1344, 1346 (11th Cir.1992) (multiple PFCV counts would have been proper if linked to multiple drug counts); *United States v. Anderson,* 313 U.S.App.D.C. 335, 59 F.3d 1323 (en banc) *cert. denied,* 516 U.S. 999, 116 S.Ct. 542, 133 L.Ed.2d 445 (1995) (holding that only one § 924(c) conviction can be tied to any one predicate offense).

However, in *Nixon* we fashioned a limited exception to this approach. In that case, the defendant fired multiple times into a car occupied by four men. Nixon was convicted of four counts of assault with intent to kill while armed (AWIK-WA), one count for each man in the car. He was also convicted of mayhem while armed and aggravated assault while armed (AAWA) with respect to the one man who was seriously hurt. These last two offenses merged with each other but not with the AWIKWA attributable to that man. The government sought one PFCV to cover all four AWIKWA convictions and a second PFCV to cover the merged mayhem and AAWA convictions. The *Nixon* court noted, *inter alia,* that the government did not claim that "firing simultaneously at several victims gives rise to multiple PFCVs," referring to the four AWIKWA convictions, one for each potential victim. The court concluded that "The

District's legislature ... has not clearly or unequivocally stated that a single possession of a single weapon during a single violent act may give rise to multiple PFCV prosecutions," and, applying the rule of lenity, found only one PFCV conviction to be permissible, covering all of the predicate offenses.

In the case before us, however, we do not have a "single violent act" with "simultaneous" action. As the government points out, the burglary was complete when appellant and his cohort entered the store with the intent to commit a criminal offense. The robbery, however, was not even begun until the perpetrators had been in the store for some period of time and until appellant eventually approached the fourth employee and brandished the firearm, and was not completed until the two men left the store with the store's property. The narrow holding of *Nixon* does not encompass the merger of PFCV charges arising out of such distinct acts, even when they involve the same firearm.

Our decision in *Hanna, supra,* helps to define generally when PFCV counts may or may not merge. We there made a distinction between offenses where continuous possession is enough to merge the charges (such as carrying a pistol without a license (D.C.Code § 22–3204(a)) and possession of a prohibited weapon ( D.C.Code § 22–3214(a)))("separate counts of CPWL or PPW would merge if charged in both the first and second incident, unless there were evidence that the possession had been interrupted") and offenses where continuousness does not necessarily cause merger. *Hanna,* 666 A.2d at 855 n. 12 (D.C.1995). We placed PFCV charges in the latter category: "PFCV ... requires more than mere possession; the defendant must possess the firearm while committing

*United States,* 666 A.2d 845, 856 (D.C.1995) (citing *Poole v. United States,* 630 A.2d 1109, 1129 (D.C.1993)) ("[A] PFCV count does not merge with counts of armed robbery [or] burglary while armed").

No argument is made on appeal that the armed robbery and armed burglary offenses

should merge, nor would such an argument be successful in any event. *Hanna,* 666 A.2d at 858 ("[T]he first degree burglary while armed count does not merge with the armed robbery count ... because each requires proof of an element that the other does not.")

a crime of violence. Each time the defendant commits an independent violent crime, a separate decision is made whether or not to possess the firearm during that crime." *Id.*

In *Nixon* itself, we observed that *Hanna* recognized the doctrine of "fresh impulse" as distinguishing the two phases of continuous possession of the same firearm. *See Nixon,* 730 A.2d at 153 n. 10, citing *Hanna,* 666 A.2d at 855 ("Counts d[o] not merge when an 'appreciable interval' of time between two criminal episodes indicated that defendant reached a 'fork in the road' or had acted in response to a fresh impulse"), *quoting Spain v. United States,* 665 A.2d 658 (D.C.1995). *See also Blockburger v. United States,* 284 U.S. 299, 302–03, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ("the next [offense] was not the result of the original impulse, but of a fresh one, that is to say, a new bargain"). In the *Hanna* case, the defendants committed a crime while armed, then left the building; shortly thereafter, they returned to the building, where they committed further crimes while armed. In *Nixon,* the defendant engaged in one single incident, which consisted of multiple gunshots, using the same gun, directed at multiple victims.

We have applied the "fresh impulse" test in several instances involving multiple convictions of violating the same statute. *See, e.g., Hanna,* 666 A.2d at 855 (assaults and robberies divided into two sets of incidents since defendant had fresh impulse to return after first set of incidents); *Spain v. United States,* 665 A.2d 658, 661 (D.C. 1995) (fresh impulse precluded merger of indecent liberties with a minor child charge and assault with intent to commit carnal knowledge charge); *Allen v. United States,* 580 A.2d 653, 658 (D.C.1990) (upholding two drug convictions separated by the time it took police to drive around the block).

As was done in *Hanna,* the same general concept has been phrased as that of a "fork in the road" where a defendant has an opportunity to reconsider his action before proceeding onward. *See, e.g., Maddox v. United States,* 745 A.2d 284, 294 (D.C.2000) (Therefore, whether [appellant]'s convictions of armed robbery and assault with a deadly weapon merge, depends on "whether there was any evidence that [appellant] reached a 'fork in the road,' leading to a 'fresh impulse' which resulted in a separate offense .") [citations omitted]; *Bullock v. United States,* 709 A.2d 87, 91 (D.C.1998) (defendant properly convicted both of distribution of drugs and subsequent possession with intent to distribute where defendant reached "fork in the road" but remained on scene as result of "renewed criminal impulse").

In *Spain,* we elucidated this concept: "This court has adopted the "fork in the road" test in cases such as this for determining whether there are two separate criminal acts or one single act:

> If at the scene of the crime the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive intentions make him subject to cumulative punishment, and he must be treated as accepting that risk, whether he in fact knows of it or not.

*Id.* at 660, *quoting Irby v. United States,* 129 U.S.App.D.C. 17, 390 F.2d 432, 437–38 (1967) (en banc) (Leventhal, J., concurring). *See also Owens v. United States,* 497 A.2d 1086, 1096 (D.C.1985) ("Thus we must determine, first, whether appellant or his accomplice reached a "fork in the road" after the attempted robbery failed when the complainant turned and started to run away, and second, whether appellant or his accomplice nevertheless decided, as a result of a new "impulse," to invade a different interest by shooting the complainant in the leg.")

The burglary and the robbery in the case before us were not committed simultaneously or as a single violent act. The robbers spent some time in the store and had an opportunity to reflect, or to

reach a fork in the road, before undertaking to rob the register and watch display. The two men entered, possessing the requisite intent to rob the store (and thereby completing the act of armed burglary), and were immediately approached by a store employee who led them back to the coat rack to show them coats; appellant then engaged in a short conversation with the store manager about future shipments of coats. During this time they clearly had time to reflect whether to continue on to the armed robbery, which had not yet begun. Only after appellant approached a fourth employee with a brandished gun did the robbers begin the armed robbery.

This scenario is quite distinct from the kind of simultaneous violent act involved in the *Nixon* holding. While the burglary and ensuing robbery were not as distinct in time and place as in *Hanna*, we are quite satisfied that the *Hanna* principle applies to sustain the multiple PFCV convictions.

*Affirmed.*