*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CM-1137

SHAWN SIMMS, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-5762-17)

(Hon. Danya A. Dayson, Trial Judge)

(Argued February 22, 2019                    Decided January 21, 2021)

*Anna B. Scanlon* for appellant. *Rupa Ranga Puttagunta* was on the brief for appellant.

*Jillian D. Willis,* Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney at the time, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Colleen Kukowski*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and EASTERLY, *Associate Judges*, and FISHER, *Senior Judge*.[*]

Opinion for the court by *Associate Judge* GLICKMAN.

Dissenting opinion by *Senior Judge* FISHER at page 22.

---

[*] Judge Fisher was an Associate Judge at the time of oral argument. His status changed to Senior Judge on August 23, 2020.

GLICKMAN, *Associate Judge*:  This appeal from a conviction for unlawfully distributing marijuana concerns the effect of changes wrought in the District of Columbia's controlled substances law by the Legalization of Possession of Minimal Amounts of Marijuana for Personal Use Initiative of 2014, D.C. Law 20-153 (hereinafter referred to as the "Legalization Initiative" or just the "Initiative"). District law generally prohibits the distribution of marijuana, by sale or otherwise, as it does other controlled substances.  But the Initiative amended the law to legalize purchases, by adults, of marijuana in small amounts (up to two ounces).  Thus, such transactions now are simultaneously illegal for the sellers but legal for the buyers. Additionally, as a second exception to the general ban on distribution, the Initiative made it lawful for adults to transfer up to one ounce of marijuana, without remuneration, to other adults.  The legal question presented in this appeal is whether the Initiative's changes in the law allow a person to purchase up to an ounce of marijuana in order to transfer it to another person (who may fund the purchase), as what sometimes has been called a buyer's purchasing agent.

Appellant Shawn Simms acted as such a buyer's agent in the transaction for which the government prosecuted him in Superior Court for unlawfully distributing marijuana.  Both his purchase and transfer of marijuana were lawful under District law as it has been amended by the Legalization Initiative.  The trial judge found

appellant guilty, however, on the theory that he aided and abetted a sale transaction that was unlawful for *the seller* to make. We conclude that appellant's conviction must be reversed. We hold that merely purchasing marijuana on behalf of another, in the manner now expressly permitted by our amended statute, is not enough to render the purchaser guilty of unlawful distribution as an aider and abettor of the seller.

## I.

Appellant was charged with one count of unlawful distribution of marijuana in violation of D.C. Code § 48-904.01(a)(1) (2014 Repl. & 2020 Supp.). The principal witness at his bench trial, Metropolitan Police Department Officer William Turner, testified that he encountered and arrested appellant under the following circumstances.

On April 4, 2017, while participating as an undercover officer in a buy/bust narcotics law enforcement operation in Southeast D.C., Officer Turner approached a woman he saw playing with her dog on Mellon Street S.E. and asked her whether she knew where he could buy marijuana. The woman told him "they were up at the store" and (in Officer Turner's words at trial) "directed [his] attention to [appellant]," who happened to be present in the vicinity. Officer Turner approached

appellant and told him he was trying to buy marijuana. Appellant, too, responded by saying that "they were up at the store." Appellant did not ask Officer Turner how much marijuana he wanted and expressed no interest in helping him obtain it.

Nonetheless, Officer Turner asked appellant whether he knew who "they" were and could take him to "them." Appellant agreed to do so. Together they walked up to the store, a takeout called America's Best Wings, and entered it. Officer Turner gave appellant $20 in pre-recorded funds to make the purchase for him. Appellant located the seller, a man later identified as John Livingston. In exchange for the $20, Livingston gave appellant a small plastic bag containing 1.61 grams of marijuana. Officer Turner and appellant then left the store. Appellant gave the bag of marijuana to Officer Turner. Officer Turner thanked him for his help and the two men separated. Appellant neither asked for nor received anything from Officer Turner in return for his services. There is no evidence that appellant sought or received any remuneration from the seller.

Shortly after Officer Turner's departure, other officers participating in the buy/bust operation stopped and arrested both appellant and Livingston. The police recovered the pre-recorded $20 from Livingston, who later pleaded guilty to distribution of marijuana. They recovered nothing incriminating from appellant.

The government presented no other evidence to prove that appellant was working with Livingston or anyone else to distribute marijuana, that appellant benefited from or had a stake in the sale, or that appellant had any arrangement or connection with Livingston besides being the purchaser in this single transaction.

Appellant, who put on no evidence in his defense, moved for a judgment of acquittal, arguing that his unremunerated actions in purchasing a small amount of marijuana for a buyer were lawful under the plain terms of D.C. Code § 48-904.01(a)(1), following the statute's amendment two years earlier by the Legalization Initiative, and that the evidence introduced by the government was insufficient to convict him as the seller's accomplice under an aiding-and-abetting theory. The government countered that the statute still made the sale of marijuana illegal, and it disputed the availability of a buyer's agent defense.

Denying appellant's motion and crediting Officer Turner's testimony, the trial judge found appellant guilty as an aider and abettor of the sale of marijuana. The judge found that, after being "pointed out" as "somebody who could aid in the purchase of drugs," appellant did the following: He "accompanied the buyer [Officer Turner] to the point of sale"; he inquired of Officer Turner "how much [marijuana] he wanted, . . . asking a question which facilitated the transaction, the

actual sale of the drugs";[1] and he "took the money" from Officer Turner, "spoke directly to the seller," "transferred the money [and] completed the transaction himself," and gave the marijuana to the buyer.

By taking these actions, the judge reasoned, it was "fairly clear that [appellant] associated himself with the commission of the crime of the sale," that "he participated in the crime as something he wished to bring about," and that "he intended by his action to make it succeed." The judge added that while appellant "may have aided the buyer . . . or the purchaser, aiding the purchase and the sale are not mutually exclusive; one can do both." Appellant, the judge said, "aided the transaction, not just the transfer without remuneration of the drugs"; his actions were "concerned not only with altruistic aid of the buyer, but interested in the completion of the sale."

---

[1] We must disregard this finding because it is without support in the record and is clearly erroneous. *See* D.C. Code § 17-305 (2012 Repl.). Officer Turner did not testify that appellant asked him how much marijuana he wanted. Officer Turner testified only that he asked appellant to take him to the store, appellant agreed to do so, and he gave appellant $20 to make the purchase. This testimony was not enough to support the inference that appellant asked Officer Turner how much marijuana he wanted. We need not belabor the point, however, because even if appellant had asked, it would not have implied he was aiding and abetting the seller as opposed, for example, to merely ascertaining that the buyer wanted to purchase (only) a lawful amount of marijuana.

**II.**

Appellant argues there was insufficient evidence to convict him of unlawful distribution of marijuana as an aider and abettor because purchasing a small amount of marijuana and transferring it to another without remuneration are both lawful activities under the statutory amendments made by the Legalization Initiative, and there was no evidence that he was remunerated for engaging in these activities or that he acted with the intent of aiding the seller. In assessing appellant's claim, we view the evidence in the light most favorable to sustaining the verdict on appeal, with due deference to the fact finder's prerogative to weigh the evidence and draw justifiable inferences of fact.[2] Where the issue is one of statutory interpretation, our review is *de novo*.[3] As stated in this court's recent opinion explicating the Legalization Initiative, our "aim is to ascertain and give effect to the legislature's intent," and our "primary index is the plain language of the statute, which we

---

[2] *E.g.*, *Dorsey v. United States*, 902 A.2d 107, 111 (D.C. 2006).

[3] *Kornegay v. United States*, 236 A.3d 414, 418 (D.C. 2020) (reversing conviction for possession with intent to distribute marijuana where defendant had less than two ounces and was not shown to be making the marijuana available for sale).

examine holistically, accounting for its full text, language as well as punctuation, structure, and subject matter."[4]

Until 2014, as explained more fully in *Kornegay*,[5] D.C. Code § 48-904.01(a)(1) made it unlawful for anyone to distribute, or to possess with intent to distribute, marijuana (a controlled substance) in any amount. Appellant's conduct in purchasing and transferring the marijuana would have been a crime under that prior law. But in D.C. Law 20-126, the Marijuana Decriminalization Amendment Act of 2014 (hereinafter the "Decriminalization Act"), the D.C. Council provided that "[n]otwithstanding any other District law, the possession or transfer without remuneration of marijuana weighing one ounce or less shall constitute a civil violation" and "shall not constitute a criminal offense."[6] The following year, the Legalization Initiative went even further and amended D.C. Code § 48-904.01(a)(1) to legalize the purchase and possession of marijuana under two ounces, and the transfer without remuneration of marijuana under one ounce, for persons 21 years of age or older. The statute now provides, in relevant part, that:

---

[4] *Id.* (punctuation and citations omitted).

[5] *See id.* at 416–18.

[6] Decriminalization Act § 101, codified in D.C. Code § 48-1201(a), (b) (2014 Repl. & 2020 Supp.).

> Notwithstanding any provision of this chapter to the contrary, it shall be lawful, and shall not be an offense under District of Columbia law, for any person 21 years of age or older to:
>
> (A) Possess, use, purchase, or transport marijuana weighing 2 ounces or less;
>
> (B) Transfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less[.][7]

In line with this provision, the amended statute specifies that the term "controlled substance" "shall not include . . . [m]arijuana that is or was in the personal possession of a person 21 years of age or older at any specific time if the total amount of marijuana that is or was in the possession of that person at that time weighs or weighed 2 ounces or less"[8]—with the exception that "any marijuana . . . sold or offered for sale or made available for sale" remains a "controlled substance."[9]

Consequently, under the present law, the purchase and sale of a small amount of marijuana are treated differently—the buyer's action is now legal, whereas the

---

[7] D.C. Code § 48-904.01(a)(1)(A) – (B).

[8] *Id.* § 48-904.01(a)(1A)(A)(i).

[9] *Id.* § 48-904.01(a)(1A)(B).

seller's is still a criminal offense.[10] And transferring a small amount of marijuana without remuneration likewise is treated differently from selling it—the former is lawful while the latter is not.

Despite these changes in the law, the government argues that facilitating any "distribution" of marijuana is still a crime under District law, with no exception for anyone merely acting as a purchasing agent for a consumer-buyer, because (1) D.C. Code § 48-904.01(a)(1) continues to provide that, "[e]xcept as authorized by this chapter . . . it is unlawful for any person knowingly or intentionally to . . . *distribute*, or possess, with intent to . . . distribute, a controlled substance";[11] and (2) the term

---

[10] *See also* D.C. Code § 48-904.01(a)(1)(D); *Kornegay*, 236 A.3d at 419–20 ("Our discussion of D.C. Code § 48-904.01(a)(1) does not end here, because the exception to the statute that makes it generally lawful to possess less than two ounces of marijuana (with or without the intent to distribute) is itself subject to an exception: Section 48-904.01(a)(1)(D) contains the proviso that 'nothing in this subsection shall make it lawful to sell, offer for sale, or make available for sale any marijuana or cannabis plants.' We acknowledge that, both in the statute as enacted and as codified, this exception-within-an-exception is typographically located within subparagraph (D) (making lawful the possession of only a subset of cannabis, specifically, marijuana grown from cannabis plants lawfully possessed within the home, as described in subparagraph (C)). But the text of this exception-within-an-exception plainly refers to the entirety of § 48-904.01(a). Accordingly, we understand § 48-904.01(a)(1) to permit an adult to possess two ounces or less of marijuana regardless of their intent, so long as that adult does not 'sell, offer for sale, or make available for sale' the marijuana.").

[11] *Id.* (emphasis added).

"distribute" is statutorily defined as "the actual, constructive, or attempted transfer from one person to another other than by administering or dispensing of a controlled substance, *whether or not there is an agency relationship*."[12]

We do not consider this a tenable argument in support of appellant's conviction. We agree that, other than in the case of small transfers of marijuana covered by the Legalization Initiative, the statutory prohibition on drug "distribution" precludes a "buyer's agent" or similar defense. To remove that defense in drug distribution prosecutions as a general matter was, in fact, the reason the words "whether or not there is an agency relationship" were included in the statutory definition of "distribute." Prior to 1970, federal controlled substances law (the so-called "Harrison Act") made it a crime to sell narcotics, and a defendant was not considered to be engaged in the sale of narcotics if he only "undertook to act in the prospective purchaser's behalf" and "purchased the drug from a third person with whom he was not associated in selling."[13] In the Comprehensive Drug Abuse

---

[12] *Id.* § 48-901.02(9) (2014 Repl. & 2020 Supp.) (emphasis added).

[13] *United States v. Sawyer*, 210 F.2d 169, 170 (3d Cir. 1954); *see also Lewis v. United States*, 337 F.2d 541, 543–44 & n.4 (D.C. Cir. 1964).

Prevention and Control Act of 1970,[14] however, Congress adopted an expanded definition of distribution (encompassing but not limited to sales) that applied to virtually all transfers of controlled substances "whether or not there exists an agency relationship," thereby eliminating the purchasing agent defense in prosecutions under federal law.[15] And the same definition of distribution was included in the District of Columbia statute, thereby generally precluding a purchasing agent defense and similar defenses under our law too.[16]

But although the Legalization Initiative did not amend that statutory definition, the Initiative altered its applicability—the prohibition on distribution itself no longer applies to marijuana in the same way as it does to controlled substances in general. Section 48-904.01(a)(1) begins with the qualification "[e]xcept as authorized by this chapter . . . ." The requisite authorization is now

---

[14] 21 U.S.C. § 801 *et seq.*

[15] *See United States v. Porter*, 764 F.2d 1, 11-12 (1st Cir. 1985); *United States v. Marquez*, 511 F.2d 62, 64 (10th Cir. 1975); *United States v. Pierce*, 498 F.2d 712, 713 (D.C. Cir. 1974).

[16] *See, e.g.*, *Long v. United States*, 623 A.2d 1144, 1149 n.10 (D.C.1993); *Minor v. United States*, 623 A.2d 1182, 1186 (D.C. 1993) (italicization omitted) ("Being an agent of the buyer is not . . . a valid defense to a charge of distributing a controlled substance.").

there—as stated above, the same subsection states explicitly that "*[n]otwithstanding any provision of this chapter to the contrary*, it shall be lawful . . . for any person 21 years of age or older to . . . [t]ransfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less."[17]  Thus, while there remains a prohibition on transfers of marijuana (1) by sale, (2) in quantities greater than an ounce, or (3) to persons under 21 years of age, the statute expressly exempts from that prohibition, and unambiguously permits, unremunerated transfers of an ounce or less of marijuana to an adult.

Under a straightforward reading of D.C. Code § 48-904.01(a)(1), appellant's purchase of less than two grams of marijuana was on its face lawful, and his transfer of that amount of marijuana to Officer Turner without remuneration was likewise lawful.[18]  That appellant purchased the marijuana for someone other than himself is immaterial.  In *Kornegay* this court rejected the contention that the amendments to § 48-904.01 "decriminalized only possession of marijuana for 'personal use,'" and concluded that subsection (a)(1) makes it lawful for an adult to possess two ounces

---

[17]  *Id.* § 48-904.01(a)(1)(B) (emphasis added).

[18]  It is undisputed that both appellant and Officer Turner were over 21 years of age.

or less of marijuana "regardless" of an intent to distribute it, "so long as that adult does not 'sell, offer for sale, or make available for sale' the marijuana."[19] The validity of appellant's conviction therefore depends on whether the trial judge nonetheless properly found him liable for illegally distributing marijuana, based on his involvement in an illegal sale, under the law of aiding and abetting.

In the District of Columbia, accomplices prosecuted for aiding and abetting the principal offender in the commission of a crime are charged as principals.[20] To be criminally culpable under the "purpose-based" definition of "aiding and abetting" that we follow, "an accomplice 'must be concerned in the commission of *the specific crime with which the principal defendant is charged*; he must be an associate in guilt of *that crime*.'"[21] This "purpose-based" standard "require[s] proof that the accomplice intended to help the principal to commit the charged offense."[22]

---

[19] *Kornegay*, 236 A.3d at 419–20.

[20] D.C. Code § 22-1805 (2012 Repl.).

[21] *Wilson-Bey v. United States*, 903 A.2d 818, 831 (D.C. 2006) (en banc) (emphasis in original, punctuation and citation omitted).

[22] *Id*. at 834.

In this case, the trial judge considered it enough to hold appellant guilty as an aider and abettor of the seller that appellant's actions as an intermediary for the buyer "aided the transaction." Before the Legalization Initiative, this court indicated that "aiding the transaction" would have been a permissible basis for accomplice liability, at least in some circumstances (and it still may be, where the transaction involves drugs other than marijuana and thus is illegal for all participants).[23]

But after the Legalization Initiative, this cannot be quite right with respect to small marijuana transactions. Under a statutory regime that criminalizes only the sale side of the transaction and explicitly declares the purchase to be lawful, "aiding the transaction" does not provide a sufficient or satisfactory test of criminal accomplice liability because it does not take into account which side the defendant was on. Certainly it would be incongruous to prosecute the purchasing agent for "aiding and abetting" *the purchaser* where the statute declares the purchase lawful

---

[23] *See Lowman v. United States*, 632 A.2d 88, 91 (D.C. 1993) ("Even were Lowman implicitly arguing that she was aiding and abetting the buyer rather than the seller, the jury could reasonably find that Lowman encouraged and facilitated the sale of the drugs and, therefore, that she was aiding and abetting the seller's distribution of cocaine."); *Griggs v. United States*, 611 A.2d 526, 529 (D.C. 1992) (holding that appellant who offered to escort an undercover police officer to the seller of crack cocaine, introduced the officer to the seller as his cousin, and waited while the officer purchased the cocaine from the seller, thereby "'encouraged and facilitated' [the seller's] crime of distribution").

(and subsequent uncompensated transfers between the agent and the purchaser to be lawful as well). And to say that the buyer's surrogate also became an accomplice of the seller merely by facilitating the transaction for the buyer would seem to be incongruous too, because we would not say that about buyers themselves. That all persons who participate in any sale transaction can be said to intend the sale to be made, regardless of which side of the transaction they are on, cannot be taken to mean they all are accomplices of the seller by virtue of that fact alone.[24]

As the Supreme Court explained in *Abuelhawa v. United States*,[25]

> Where a transaction like a sale necessarily presupposes two parties with specific roles, it would be odd to speak of one party as facilitating the conduct of the other. A buyer does not just make a sale easier; he makes the sale possible. No buyer, no sale; the buyer's part is already implied by the term "sale," and the word "facilitate" adds nothing. We would not say that the borrower facilitates the bank loan.[26]

---

[24] To illustrate the point, when readers of this opinion go to the store to buy groceries for themselves, we would not say their purpose in doing so is to help the grocers make the sales. The same holds true when our readers are running errands to buy groceries for others.

[25] 556 U.S. 816 (2009).

[26] *Id.* at 820 (2009) (holding that a purchaser of drugs, guilty only of a misdemeanor for such conduct, could not be convicted of a felony on the premise that his purchases facilitated or aided and abetted the sales).

"[W]here a statute treats one side of a bilateral transaction more leniently," the Court also pointed out, "adding to the penalty of the party on that side for facilitating the action by the other would upend the calibration of punishment set by the legislature, a line of reasoning exemplified in the courts' consistent refusal to treat noncriminal liquor purchases as falling under the prohibition against aiding or abetting the illegal sale of alcohol."[27]

We think it significant, for present purposes, that the case *Abuelhawa* cited for the latter proposition was *Lott v. United States*.[28]  Citing numerous other courts' decisions, *Lott* explicitly held that under a statute penalizing the sale but not the purchase of liquor, "the offense is committed only by the vendor or someone who aids him in selling, and [] *the purchaser and those who aid him in the purchase are not guilty of aiding or abetting in the commission of the offense*."[29]  Courts construing statutes criminalizing sales but not (or differently from) purchases of

---

[27] *Id.*

[28]  205 F. 28 (9th Cir. 1913).

[29] *Id.* at 29 (emphasis added).

drugs have reached the same conclusion.[30] In our view, for the reasons given above, this general conclusion makes sense.

Thus, the statutory dichotomy arising from the Legalization Initiative compels us to ask in this case whether the government proved more than that appellant "aided the transaction." Appellant could not be convicted as an accomplice of the seller if appellant acted (without remuneration) solely with the intention of helping the buyer make a lawful purchase of marijuana. To convict appellant for aiding and abetting the seller, the government needed to prove that he intended his participation to aid

---

[30] *See, e.g.*, *People v. Roche*, 379 N.E.2d 208, 211 (N.Y. 1978) ("Since the thrust of our statutes . . . is not directed against purchasers, an individual who participates in such a transaction solely to assist a buyer . . . incurs no greater criminal liability than does the purchaser he aids and from whom his entire standing in the transaction is derived. Specifically, without more he may not be treated as an accomplice of the seller."); *State v. Bressette*, 388 A.2d 395, 398 (Vt. 1978) ("[T]he charge of selling [marijuana] . . . requires . . . proof that, in some manner, the person charged was acting on behalf of the seller, rather than just for the buyer. To hold the agent of the buyer to a criminal responsibility that the buyer himself does not carry under the statute seems to us a strained construction, not to be resorted to unless plainly compelled by legislative language and purpose, a compulsion not here demonstrated.").

As we have discussed above, a buyer's purchasing agent also was not considered to be the seller's accomplice under the former federal controlled substances law. (Under current federal law, which contains no exception for marijuana, the question would seem to be moot because the definition of distribution encompasses the activities of the buyer's agent without the need to consider that person's accomplice liability.)

the seller; i.e., that he acted with the purpose not simply to make a purchase (though that necessarily and tautologically would entail a sale), but to help the seller to make the unlawful sale.[31]

The trial judge did not find that appellant's purpose was to so aid the seller. We agree with appellant that the evidence the government presented at trial was insufficient to support such a finding. There was no evidence, for example, that appellant was stationed on Mellon Street for the purpose of connecting would-be buyers with the seller, or that he otherwise was engaged in drug distribution activities.[32] Appellant did nothing inside America's Best Wings suggesting he was

---

[31] It should be noted that we have no occasion in this opinion to address co-conspirator liability, as distinguished from accomplice liability.

[32] We do not overlook Officer Turner's testimony that a woman on the street "directed" his attention to appellant when he asked her where he could buy marijuana. Appellant did not object to the admission of this testimony on hearsay (or other) grounds. *See Little v. United States,* 613 A.2d 880, 882 (D.C. 1992) (adopting Federal Rule of Evidence 801(a)'s definition of hearsay as including "nonverbal conduct of a person, if it is intended by the person as an assertion"). *See also United States v. Caro,* 569 F.2d 411, 416 n.9 (5th Cir. 1978) (co-conspirator's pointing at appellee's home "constitute[d] . . . assertive conduct" and was inadmissible without an applicable hearsay exception); *United States v. Abou-Saada*, 785 F.2d 1, 8 (1st Cir. 1986) (co-conspirator's pointing at appellant in view of police "amount[ed] to hearsay, for it [was] conduct intended as an assertion"). Even so, as the trial judge herself stated, the woman's action "obviously does not lead [to] the conclusion that [appellant] was selling drugs in the neighborhood." The judge thought it did justify "a reasonable inference that . . . someone knew that [appellant] could aid in the sale of drugs." That inference adds nothing, however, to what the

part of the seller's distribution operation or anything other than a customer. Nor was there evidence that appellant had a prior arrangement with the seller, that he had a stake in seeing the sale consummated, or that he hoped to profit in some way by being of assistance to the seller. In fact, it appears appellant would have been perfectly content to point the officer to America's Best Wings and let him buy the marijuana there on his own. Appellant only became involved with the purchase after Officer Turner specifically requested his help (which Officer Turner needed because he did not know the identity of the seller).

In short, appellant did only what an apparent buyer asked him to do to achieve the buyer's lawful acquisition of a small amount of marijuana for personal use. Nothing appellant did was inconsistent with that understanding of his limited role. That appellant knew where to buy the marijuana, and that he was willing to lend his aid to a stranger who asked for his help in getting it, is not enough to prove that appellant was working as an accomplice of the seller or expecting the seller to remunerate him for his involvement in the exchange. In the eyes of the law,

---

evidence otherwise showed, that appellant not only could, but actually did, help facilitate the sales transaction. The inference that Officer Turner's interlocutor believed (or "knew") appellant could do so does not overcome the lack of any proof that appellant actually was working in some way on behalf of the seller.

appellant's proven behavior was no different from that of a person who simply runs an errand to lawfully buy a small amount of marijuana as a favor for a friend.[33]

**III.**

Without proof that appellant acted for the purpose of aiding the seller to conduct his illegal business, his actions in buying a small amount of marijuana and transferring it, without remuneration, to Officer Turner were lawful under D.C. Code § 48-904.01(a)(1). We therefore must reverse his conviction for violating that statute.[34]

---

[33] Consider the following hypothetical. A man who wants to lawfully obtain and smoke marijuana in the District of Columbia, but who does not know where to get it or, perhaps, is physically unable to do so, asks an acquaintance to purchase some for him. He gives her $20 to do so. The acquaintance happens to know of someone who sells marijuana on the street corner, and she agrees to run the errand. She uses the $20 to buy the marijuana from the seller on the corner and brings it back to her friend, receiving nothing but her friend's gratitude in return. Based on those facts alone, should she really be viewed as having criminally aided and abetted the seller? We find that very hard to believe. Her actions, we are certain, would and should be considered legal under our current law. We fail to see how appellant's proven conduct in this case is materially distinguishable.

[34] To avoid any possible misunderstanding, we again note that the holding of this opinion applies only to the purchases and transfers of marijuana in small quantities covered by the Legalization Initiative. We recognize no generally applicable buyer's agent defense in District law to the distribution of controlled substances. *See Minor*, 623 A.2d at 1186–87. We agree with our dissenting colleague that, under District of Columbia law, it is still generally true that "being

*So ordered.*

FISHER, *Senior Judge*, dissenting:  In the District of Columbia "the law is clear that being an agent of the buyer is not recognized as a valid defense to a charge of distributing a controlled substance." *Minor v. United States*, 623 A.2d 1182, 1186 (D.C. 1993).  Nevertheless, my colleagues hold that appellant's conviction must be reversed because he was merely acting as a buyer's agent.  This decision is based on at least two legal errors:  (1) they mistakenly conclude that the Legalization Initiative authorized a buyer's agent defense to a charge of distributing small amounts of marijuana and (2) they view the evidence in the light most favorable to appellant.

I do not quarrel with the general proposition that the Council (or the voters, when exercising their legislative power through an initiative) may effectively overrule holdings of this court.  Indeed, the very title of the Legalization of Possession of Minimal Amounts of Marijuana for Personal Use Initiative of 2014, D.C. Law 20-153, forthrightly signals that it was meant to change the law relating to possession of marijuana.  And the Initiative does make this change, providing that

---

an agent of the buyer is not recognized as a valid defense to a charge of distributing a controlled substance." *Id.* at 1186.  But as we have explained, the amendments to D.C. Code § 48-904.01 have abrogated that general rule with respect to small amounts of marijuana.

it "shall not be an offense" for a "person 21 years of age or older" to possess marijuana "weighing 2 ounces or less." D.C. Code § 48-904.01(a)(1)(A).

Having read this new statutory language, a person might logically ask how she is supposed to gain possession of marijuana without violating the law, and what can she lawfully do with it once she possesses it. The Initiative did not leave the answers to inference or implication. Instead, it expressly made it lawful not only to possess, but also to "use, purchase, or transport marijuana weighing 2 ounces or less." D.C. Code § 48-904.01(a)(1)(A). Moreover, it specified that the term "controlled substance" does not include "[m]arijuana that is or was in the personal possession of a person 21 years of age or older at any specific time if the total amount of marijuana that is or was in the possession of that person at that time weighs or weighed 2 ounces or less." D.C. Code § 48-904.01(a)(1A)(A)(i). But sales of marijuana are still forbidden. "Notwithstanding the provisions of this paragraph, the terms 'controlled substance' and 'controlled substances,' as used in the District of Columbia Official Code, shall include any marijuana or cannabis plant sold or offered for sale or made available for sale." D.C. Code § 48-904.01(a)(1A)(B).

Thus, the new statute expressly addresses key questions arising from the decision to legalize the possession of small amounts of marijuana for personal use.

By contrast, the language of the statute does not explicitly authorize a buyer's agent defense, and we should not indulge efforts "to broaden the meaning of statutory language by mere inference or surmise or speculation[.]" *Grayson v. AT&T Corp.*, 15 A.3d 219, 237-238 (D.C. 2011) (en banc).  Moreover, "[t]his court will not lightly deem one of its decisions to have been implicitly overruled and thus stripped of its precedential authority." *Thomas v. United States*, 731 A.2d 415, 420 (D.C. 1999).

When this court rejected the buyer's agent defense, it relied in major part upon the statutory definition of distribution, which prohibited the transfer of a controlled substance to another "whether or not there is an agency relationship." *Minor*, 623 A.2d at 1186 (quoting former D.C. Code § 33-501(9)).  This key definition was not changed.  Even after the Legalization Initiative, to "distribute" means the transfer of a controlled substance "from one person to another . . . whether or not there is an agency relationship."  D.C. Code § 48-901.02(9).  The buyer's agent theory continues to be precluded by statute.

The majority's decision thus seems to rest on implications drawn from two parts of the statute — the right of a person to purchase a small amount of marijuana, and the provision making it lawful to "[t]ransfer to another person 21 years of age or older, without remuneration, marijuana weighing one ounce or less."  D.C. Code

§ 48-904.01(a)(1)(B). It reasons that a buyer is not confined to purchasing the marijuana himself because an agent may lawfully buy it for him. I have already explained why that is not a valid proposition. It is also an unwise pronouncement, seeming to immunize clever middlemen who are key participants in the chain of commercial distribution.

My colleagues also focus too narrowly on the transfer from appellant to Officer Turner. We are required instead to consider the record as a whole, and to view it in the light most favorable to the verdict. Suggesting that appellant just "happened" to be there, that he was acting altruistically, or that he was pressured into participating violates our standard of review. The trial court correctly understood that this was a commercial transaction and that appellant was an integral part of the sale. As she explained, "aiding the purchase and the sale are not mutually exclusive." *See Lowman v. United States*, 632 A.2d 88, 91 (D.C. 1993) ("Even were Lowman implicitly arguing that she was aiding and abetting the buyer rather than the seller, the jury could reasonably find that Lowman encouraged and facilitated the sale of the drugs and, therefore, that she was aiding and abetting the seller's distribution of cocaine.").

The Initiative did not legalize this distribution of a controlled substance. Appellant was not engaged in social sharing by passing a joint to a friend, nor was he contributing marijuana he already lawfully possessed. We do not know whether appellant received some commission from Mr. Livingston, but, given the record before us, the government was not required to prove that he did. The statute was not intended to immunize someone like appellant who knowingly served as a middleman in a sale of marijuana. The record plainly discloses that he took the officer to the point of sale, collected the money in advance, and soon transferred a controlled substance in return. It cannot realistically be said that this was a transfer of marijuana without remuneration.